FILED

2010 FEB 10  PM 12: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1 | SEYFARTH SHAW LLP
2 | Eric R. McDonough (SBN 193956)
   |   emcdonough@seyfarth.com
3 | Daniel Hargis (SBN 224226)
   |   dhargis@seyfarth.com
4 | Daniel R. Sable (SBN 245171)
   |   dsable@seyfarth.com
5 | 2029 Century Park East, Suite 3500
6 | Los Angeles, California 90067-3021
   | Telephone: (310) 277-7200
7 | Facsimile: (310) 201-5219

8 | SEYFARTH SHAW LLP
9 | Lawrence E. Butler (SBN 111043)
   |   lbutler@seyfarth.com
10 | Robin M. Cleary (SBN 192489)
    |   rcleary@seyfarth.com
11 | 560 Mission Street, 31st Floor
    | San Francisco, California 94105
12 | Telephone: (415) 397-2823
13 | Facsimile: (415) 397-8549

14 | Attorneys for Defendant and Cross-Defendant
15 | FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for
    | MARSHALL BANK, N.A.

16 |

17 | UNITED STATES DISTRICT COURT

18 | CENTRAL DISTRICT OF CALIFORNIA

19 | INTEGRATED FINANCIAL
    | ASSOCIATES, INC., a Nevada
-20 | corporation,

Case No. EDCV10-0209 MP (OPx)

(Riverside Superior Court Case No. RIC 532644)

21 |            Plaintiff.

22 |

23 |      v.

NOTICE OF REMOVAL OF ACTION FROM THE SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF RIVERSIDE

24 | MARSHALL BANK, N.A., a national
    | banking association; THE MARSHALL
25 | GROUP, INC., a Minnesota corporation,
    | MARSHALL BANKFIRST

[EXHIBIT "1" - VOLUME 2 OF 5 FILED CONCURRENTLY HEREWITH]

26 | CORPORATION, a Minnesota banking
27 | corporation, NARA BANK NATIONAL
    | ASSOCIATION, a nationally chartered

[12 U.S.C. § 1819(b)(2)(B)]

28 | banking corporation, GOLD SECURITY

NOTICE OF REMOVAL

1  BANK, FIRST PRIVATE BANK &          )
2  TRUST, SAIGON NATIONAL BANK,        )
   COMMUNITY BUSINESS BANK,            )
3  TWELVE OAKS PARTNERS, LLC, A        )
   California Limited Liability Company, )
4  STATEWIDE RECONVEYANCE             )
   GROUP, INC., DBA STATEWIDE         )
5  FORECLOSURE SERVICES, a           )
   California corporation, MB-BONA,    )
6  LLC, a Minnesota limited liability   )
7  company, MARSHALL FINANCIAL        )
   GROUP, LLC, a Delaware limited      )
8  liability company, and DOES 1 through )
   100, inclusive,                      )
9                                       )
10              Defendants.             )
                                        )
11                                      )
                                        )
12  _____     )
13  TWELVE OAKS PARTNERS, LLC, a       )
    California limited liability company; )
14                                      )
              Cross-Complainant,        )
15                                      )
16         v.                           )
                                        )
17  MARSHALL BANK, N.A., a national    )
    bank; THE MARSHALL GROUP, INC., )
18  a Minnesota corporation; MARSHALL  )
    BANKFIRST CORPORATION, a          )
19  Minnesota banking corporation; NARA )
20  BANK NATIONAL ASSOCIATION, a      )
    nationally chartered banking corporation; )
21  GOLDEN SECURITY BANK; FIRST       )
    PRIVATE BANK & TRUST; SAIGON      )
22  NATIONAL BANK; COMMUNITY          )
    BUSINESS BANK; INTEGRATED         )
23  FINANCIAL ASSOCIATES, INC., a     )
24  Nevada corporation; STATEWIDE      )
    RECONVEYANCE GROUP, INC.,         )
25  DBA STATEWIDE FORECLOSURE         )
    SERVICES, a California corporation;  )
26  ALL PERSONS UNKNOWN,              )
27  CLAIMING ANY LEGAL OR             )
    EQUITABLE RIGHT, TITLE, ESTATE, )
28  LIEN OR INTEREST IN THE            )

NOTICE OF REMOVAL

1  PROPERTY DESCRIBED IN THE        )
2  COMPLAINT ADVERSE TO             )
   PLAINTIFF'S TITLE, OR ANY        )
3  CLOUD ON PLAINTIFF'S TITLE       )
   THERETO and ROES 1 through 65,   )
4  inclusive,                       )
                                    )
5            Cross-Defendants.      )
                                    )
6                                   )
                                    )
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

**18**

COPY

5701-16
pleading

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 08 2009

C. Mundo

1   SEYFARTH SHAW LLP
    Eric R. McDonough (SBN 193956)
2   Daniel Hargis (SBN 224226)
    Daniel R. Sable (SBN 245171)
3   2029 Century Park East, Suite 3500
    Los Angeles, California 90067-3021
4   Telephone: (310) 277-7200
    Facsimile: (310) 201-5219
5
    SEYFARTH SHAW LLP
6   Lawrence E. Butler (SBN 111043)
    Robin M. Cleary (SBN 192489)
7   560 Mission Street, Suite 3100
    San Francisco, California 94105
8   Telephone: (415) 397-2823
    Facsimile:  (415) 397-8549
9
    Attorneys for Third-Party Intervenor
10  MB-BONA, LLC

11

12                  SUPERIOR COURT OF CALIFORNIA

13                     COUNTY OF RIVERSIDE                BY: FAX

14  INTEGRATED FINANCIAL ASSOCIATES,  )  Case No. RIC 532644
    INC.                              )
15                                    )  **CERTIFICATE OF SERVICE**
              Plaintiff,              )
16                                    )
         v.                           )
17                                    )
    MARSHALL BANK, N.A., et al.,      )
18                                    )
              Defendants.             )
19                                    )
                                      )
20                                    )
                                      )
21                                    )
                                      )
22                                    )
                                      )
23                                    )
                                      )
24

25

26

27

28
_____
            Certificate of Service; Case No. RIC 532644

1

**CERTIFICATE OF SERVICE**

2   STATE OF CALIFORNIA              )
                                     )  ss
3   COUNTY OF SAN                    )
    FRANCISCO

4

5           I am a resident of the State of California, over the age of eighteen years, and not a party
    to the within action.  My business address is Seyfarth Shaw LLP, 560 Mission Street, Suite 3100,
    San Francisco, California 94105.  On October 8, 2009, I served the within documents:

6

7           **Notice of Motion and Motion to Expunge Lis Pendens**

8           **Memorandum of Points and Authorities in Support of MB-BONA LLC's Motion to
            Expunge Lis Pendens and Request for Attorney's Fees and Costs**

9           **Declaration of Robin M. Cleary in Support of MB-BONA, LLC's Motion to Expunge
            Lis Pendens and Request for Attorneys' Fees**

10

11          **Declaration of David Grandstrand in Support of MB-BONA, LLC's Motion to
            Expunge Lis Pendens and Request for Attorneys' Fees**

12          **[Proposed] Order Regarding Motion to Expunge Lis Pendens**

13

14   ☐    I sent such document from facsimile machine (415) 397-8549 on October 8, 2009.  I
          certify that said transmission was completed and that all pages were received and that
15        a report was generated by facsimile machine (415) 397-8549 which confirms said
          transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this
16        action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the
          parties listed below.

17   ☒    by placing the document(s) listed above in a sealed envelope with postage thereon
          fully prepaid, in the United States mail at San Francisco, California addressed as set
18        forth below.

19   ☐    by placing the document(s) listed above, together with an unsigned copy of this
          declaration, in a sealed Federal Express envelope with postage paid on account and
20        deposited with Federal Express at Los Angeles, California, addressed as set forth
          below.

21

22   ☐    by transmitting the document(s) listed above, electronically, via the e-mail addresses
          set forth below.

23
          Robert K. Sall
24        THE SALL LAW FIRM
          32351 Coast Highway
25        Laguna Beach, CA  92651-6703
          T: (949) 499-2942
26        F: (949) 499-7403

27

28

2

---

Declaration of Robin M. Cleary in support of Motion to Expunge Lis Pendens
Case No. RIC 532644

1   I am readily familiar with the firm's practice of collection and processing correspondence
2   for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
    day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
    motion of the party served, service is presumed invalid if postal cancellation date or postage
3   meter date is more than one day after the date of deposit for mailing in affidavit.

4   I declare that I am employed in the office of a member of the bar of this court whose
    direction the service was made.

5

6   Executed on October 8, 2009, at San Francisco, California.

7

8                                                          Karen A. Rodrigues

9   SF1 28371821.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Declaration of Robin M. Cleary in support of Motion to Expunge Lis Pendens
Case No. RIC 532644

17

*pleadings*

1   SEYFARTH SHAW LLP
    Eric R. McDonough (SBN 193956)
2   Daniel Hargis (SBN 224226)
    Daniel R. Sable (SBN 245171)
3   2029 Century Park East, Suite 3500
    Los Angeles, California 90067-3021
4   Telephone: (310) 277-7200
    Facsimile: (310) 201-5219
5
    SEYFARTH SHAW LLP
6   Lawrence E. Butler (SBN 111043)
    Robin M. Cleary (SBN 192489)
7   560 Mission Street, Suite 3100
    San Francisco, California 94105
8   Telephone: (415) 397-2823
    Facsimile: (415) 397-8549
9
    Attorneys for Third-Party Intervenor
10  MB-BONA, LLC

11

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
OCT 08 2009

12              SUPERIOR COURT OF CALIFORNIA

13                  COUNTY OF RIVERSIDE

14  INTEGRATED FINANCIAL ASSOCIATES,     )  Case No. RIC 532644
    INC.                                 )
15                                       )  **[PROPOSED] ORDER REGARDING
                  Plaintiff,             )  MOTION TO EXPUNGE LIS PENDENS**
16                                       )
              v.                         )  [Assigned for all purposes to Hon. Mac R.
17                                       )  Fisher, Dept. 6]  12-22-09
    MARSHALL BANK, N.A., et al.,         )
18                                       )  Date: To be determined by the Court 850—
                  Defendants.            )  Time: To be determined by the Court
19                                       )  Judge: Hon. Mac R. Fisher
                                         )  Dept.: 6
20                                       )
                                         )  Accompanying Documents
21                                       )  1. Memorandum of Points and Authorities
                                         )  2. Declaration of Robin M. Cleary
22                                       )  3. Declaration of David Grandstrand
                                         )  3. [Proposed] Order
23                                       )
                                         )
24  _____ )

25

26

27

28

_____
    Notice of Motion and Motion to Expunge Lis Pendens / Case No. RIC 532644

1    On _____, 2009, in Department 6 of the above entitled court, located at 4050

2  Main Street, Riverside, California 92501, Third-Party Intervener MB-BONA, LLC's

3  ("Intervenor" or "MB-BONA") Motion to Expunge Lis Pendens came on regularly for hearing.

4    The Court, having read and considered the pleadings and the arguments of counsel, and

5  good cause appearing,

6    IT IS HEREBY ORDERED THAT:

7    MB-BONA's Motion to Expunge Lis Pendens is GRANTED.

8    IT IS FURTHER ORDERED THAT MB-BONA is awarded its reasonable attorneys'

9  fees and costs in the amount of $10,494.00.

10    IT IS SO ORDERED.

11  DATED: _____, 2009

12                                              Honorable Mac R. Fisher
                                                JUDGE OF THE SUPERIOR COURT

13

14

15

16

17  SF1 28371835.1

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion to Expunge Lis Pendens / Case No. RIC 532644

**16**

*pleadings*

1  SEYFARTH SHAW LLP
   Eric R. McDonough (SBN 193956)
2  Daniel Hargis (SBN 224226)
   Daniel R. Sable (SBN 245171)
3  2029 Century Park East, Suite 3500
   Los Angeles, California 90067-3021
4  Telephone: (310) 277-7200
   Facsimile: (310) 201-5219
5
   SEYFARTH SHAW LLP
6  Lawrence E. Butler (SBN 111043)
   Robin M. Cleary (SBN 192489)
7  560 Mission Street, Suite 3100
   San Francisco, California 94105
8  Telephone: (415) 397-2823
   Facsimile: (415) 397-8549
9
   Attorneys for Third-Party Intervenor
10 MB-BONA, LLC

11

12              SUPERIOR COURT OF CALIFORNIA

13                   COUNTY OF RIVERSIDE

14 INTEGRATED FINANCIAL ASSOCIATES,    )  Case No. RIC 532644
   INC.                                )
15                                     )  **DECLARATION OF DAVID**
          Plaintiff,                   )  **GRANDSTRAND IN SUPPORT OF MB-**
16                                     )  **BONA, LLC'S MOTION TO EXPUNGE**
       v.                              )  **LIS PENDENS; AND REQUEST FOR**
17                                     )  **ATTORNEYS' FEES**
   MARSHALL BANK, N.A., et al.,        )
18                                     )  [Assigned for all purposes to Hon. Mac R.
          Defendants.                  )  Fisher, Dept. 6]
19                                     )
                                       )  Date: To be determined by the Court
20                                     )  Time: To be determined by the Court
                                       )  Judge: Hon. Mac R. Fisher
21                                     )  Dept.: 6
                                       )
22                                     )  Accompanying Documents
                                       )  1. Notice of Motion and Motion
23                                     )  2. Memorandum of Points and Authorities
                                       )  3. Declaration of Robin M. Cleary
24                                     )  4. [Proposed] Order
                                       )
25

26

27

28

   ─────────────────────────────────────────────────────────
        Declaration of David Grandstrand in support of Motion to Expunge Lis Pendens
                              Case No. RIC 532644

1         I, David Grandstrand, declare as follows:

2         1.     From September, 2007 until August 2009 I was the President of Marshall Bank,

3 N. A. ("Marshall Bank"). Since August, 2009, I have been acting President of Marshall Bank,

4 N.A. I also am the President of MB-BONA, LLC ("MB-BONA") and have been since its

5 inception. In my capacity as President and acting President of Marshall Bank and as President of

6 MB-BONA, I am familiar with the books and records of both of those entities which are kept in

7 the ordinary course of business. As such, I have personal knowledge of the facts set forth herein

8 and if called as a witness could, and would competently and completely testify thereto.

9         2.     Attached as Exhibit 1 is a true and correct copy of the Promissory Note, dated

10 June 7, 2007, executed by Twelve Oaks Partners, LLC ("Twelve Oaks") in favor of Marshall

11 Bank.

12         3.     The loan made pursuant to the Promissory Note was secured by certain real

13 property located in Temecula, California ("Property"). Attached as Exhibit 2 is a true and

14 correct copy of the Deed of Trust, Absolute Assignment of Rents and Security Agreement and

15 Fixture Filing ("Deed of Trust"), dated June 7, 2007, executed by Twelve Oaks for the benefit of

16 Marshall Bank.

17         4.     Attached as Exhibit 3 is a true and correct copy of the Guaranty of Randall W.

18 Blanchard, dated June 7, 2007, related to the Marshall Bank/Twelve Oaks' loan.

19         5.     Attached as Exhibit 4 is a true and correct copy of the Development Loan

20 Agreement, dated June 7, 2007, among Marshall Bank, Twelve Oaks and Randall Blanchard.

21         6.     Attached as Exhibit 5 is a true and correct copy of a letter, dated April 1, 2008,

22 from BankFirst, the loan servicer on the Marshall Banks/Twelve Oaks' loan, to Twelve Oaks.

23         7.     Attached as Exhibit 6 is a true and correct copy of a letter, dated September 12,

24 2008, from KattenMuchinRosenman LLP, counsel at that time for Marshall Bank, to Twelve

25 Oaks and Mr. Blanchard.

26         8.     When Twelve Oaks committed numerous defaults under the Development Loan

27 Agreement and failed to cure the defaults, Marshall Bank instituted foreclosure proceedings on

28 the Property, including filing an action for judicial foreclosure in the case titled *Marshall Bank v.*

1 | *Twelve Oaks Partners, LLC, et al.,* Superior Court of California, County of Riverside, Case No.

2 | RIC 509135 and related cross-claims ("Related Case")). That case and the present action are

3 | related in that they arise out of the same set of facts and circumstances.

4 |       9.      Attached hereto as Exhibit 7 is a true and correct copy of a letter to IFA, dated

5 | March 31, 2008, from KattenMuchinRosenman LLP, the former attorney for Marshall Bank,

6 | N.A. in the Related Case.

7 |       10.     MB-BONA was created by Marshall Bank to acquire the Property at the non-

8 | judicial foreclosure sale on behalf of Marshall Bank and the loan participants. Attached hereto

9 | as Exhibit 8 is a true and correct copy of the Trustee's Deed Upon Sale, executed on August 5,

10 | 2009, transferring ownership of the Property to MB-BONA.

11 |       11.     Marshall Bank is a national bank regulated by the Office of the Comptroller of the

12 | Currency and is not regulated by the Federal Reserve Bank of Minneapolis or the South Dakota

13 | Department of Revenue. The written agreement referenced in paragraph 21 of Plaintiff's

14 | Complaint was not entered into by Marshall Bank but was instead entered into on August 2,

15 | 2007, by and among Marshall BankFirst Corp., BankFirst, the Federal Reserve Bank of

16 | Minneapolis and the South Dakota Division of Banking. A true and correct copy of that

17 | agreement is attached hereto as Exhibit 9.

18 |       12.     Marshall Bank apprised Integrated Financial Associates, Inc. ("IFA") of its intent

19 | to foreclose on the Property due to Twelve Oaks' numerous continuing defaults under the

20 | Development Loan Agreement. However, IFA made no attempts to pay Twelve Oaks'

21 | outstanding loan obligations to Marshall Bank in order to remove Marshall Bank's senior lien on

22 | the Property and prevent foreclosure.

23 |       I declare under penalty of perjury under the laws of the State of California that the

24 | foregoing is true and correct.

25 |       Executed on October __5__, 2009, in Minneapolis, Minnesota.

26 |

27 |                                   David Grandstrand

28 |

3

Declaration of David Grandstrand in support of Motion to Expunge Lis Pendens
Case No. RIC 532644

**EXHIBIT 1**

EXHIBIT NO. 4

SNYDER

1/30/09

# PROMISSORY NOTE

$59,590,000.00

Temecula, California
June 7, 2007

1.    FOR VALUE RECEIVED, TWELVE OAKS PARTNERS, LLC, a California limited liability company whose address is 40935 County Center Drive, Suite A, Temecula, CA 92591 ("Borrower"), hereby promises to pay to the order of MARSHALL BANK, N.A., a national banking association, with offices at 225 S. Sixth Street, Suite 2900, Minneapolis, MN 55402 ("Lender"), or at such other place as the holder hereof may from time to time in writing designate, in lawful money of the United States of America, the principal sum of FIFTY-NINE MILLION FIVE HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($59,590,000.00), or so much thereof as may be advanced pursuant to that certain Development Loan Agreement between Borrower and Lender of even date herewith (the "Loan Agreement"), and to pay the outstanding principal balance hereof and interest thereon from time to time as follows:

(a)    INTEREST:

(i)    The outstanding principal balance of this Note shall bear interest at a definite and certain but variable rate equal to the National Prime Rate as of its effective date as reported in the Money Rates column of The Wall Street Journal plus one and three-quarters percent (1.75%) per annum during the Loan term (the "Interest Rate").

Interest shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated and based on a 360-day year, including those periods of less than one full calendar month. If The Wall Street Journal publishes a retraction or correction of a previously published rate, the rate reported in the retraction or correction shall apply.

The Interest Rate will be adjusted daily based on the Interest Rate in effect on such day.

If the Interest Rate under this Note is a variable rate based on an index rate that is no longer available, the holder of this Note may select a comparable index rate for use under this Note. If this Note provides for a variable Interest Rate based on an index rate, Lender may lend to its other customers at rates that are equal to, more than, or less than the index rate.

(b)    PAYMENT:

(i)    _Time of Payments._ Accrued interest shall be payable monthly on the 20th day of each and every month, commencing on July 20, 2007 and continuing through and including May 20, 2009.

Twelve Oaks Partners, LLC
Promissory Note

1

v2

(ii)   Final Due Date.  The remaining unpaid principal balance of this Note, together with all accrued but unpaid interest hereon, shall be due and payable in full on June **7**, 2009 (the "Maturity Date"). This is a balloon note and the entire principal amount of this Note will remain unpaid and be due as of the Maturity Date.

2.      Lender may charge Borrower's Account No. _____ maintained with _____ for any payments of interest and principal due under this Note.

3.      In the event of a late payment by Borrower, there shall be a late charge equal to five percent (5%) of the amount of such payment that is overdue. This late payment charge shall apply individually to all payments past due, and there will be no daily pro rata adjustment.

4.      Principal amounts remaining unpaid after the maturity thereof, whether at the fixed Maturity Date or by reason of acceleration of maturity, shall bear interest from and after maturity until paid at a rate of four percent (4.0%) per annum plus the rate of interest otherwise payable hereunder (the "Default Rate").  Upon the occurrence of an Event of Default (as defined in the Loan Agreement), interest shall accrue on the unpaid principal balance of this Note at the Default Rate.

5.      All payments received by Lender hereunder shall be applied at the option of Lender first to costs payable by Borrower hereunder, then to accrued but unpaid interest, and the remainder, if any, to principal.

6.      This Note is secured by a Deed of Trust, Absolute Assignment of Rents and Security Agreement and Fixture Filing (the "Mortgage") of even date herewith pertaining to real property situated in Riverside County, California and is guarantied by Randall W. Blanchard ("Guarantor") pursuant to that certain Guaranty of Guarantor, dated as of even date herewith (the "Guaranty").

7.      The remedies of Lender, as provided herein and in the Mortgage, the Loan Agreement or other Loan Documents, shall be cumulative and concurrent and may be pursued singly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefore shall occur; and the failure or exercise of any such right or remedy shall in no event be construed as a waiver or release thereof.

8.      Time is of the essence of this obligation. Upon Borrower's failure to pay any sum due Lender under this Note in good and collectable funds on the date the same becomes due, or upon the occurrence of an event of default under the Loan Agreement, Mortgage, or any other Loan Document, Lender may, at its option, accelerate the Maturity Date and declare the entire unpaid principal balance hereof, together with all accrued and unpaid interest, and all other sums due to Lender, to be immediately due and payable and payment thereof may be enforced and recovered in whole or in part at any time by one or more of the remedies provided in the Loan Agreement, Mortgage, and other Loan Documents, including judicial or nonjudicial foreclosure, appointment of a receiver, attachment of rents, or by any other legal or equitable remedy available to Lender. Notwithstanding anything to the contrary contained herein, upon the filing of a petition commencing a case naming Borrower as debtor under the United States Bankruptcy Code, the principal of and all

accrued interest evidenced by this Note shall be automatically due and payable without any notice to or demand on Borrower or any other party.

9.      Borrower agrees to pay all costs of Lender, including attorneys' fees incurred in collection of sums due pursuant to this Note or incurred in enforcing or protecting its rights or remedies under this Note and the Loan Documents, or otherwise available to it by law or equity including, but not limited to, any right or remedy available pursuant to the United States Bankruptcy Code, and other costs and expenses, including attorneys' fees incurred by Lender, relating to or arising from the bankruptcy or insolvency of Borrower, and including attorneys' fees, costs and expenses incurred after the entry of judgment.

10.     This Note may be prepaid in whole or in part at the option of Borrower without the payment of a prepayment premium or penalty at any time after the first six (6) months of the term of this Note. Any prepayment of this Note during such six (6) month period, other than in connection with partial releases given pursuant to the terms of the Loan Agreement, shall be assessed a fee equal to one percent (1.0%) of the amount of the principal prepaid, which shall be paid by Borrower as a part of such prepayment.   Borrower shall provide Lender with ten (10) days prior notice of any such payments.

11.     In the event of any sale, grant, pledge, assignment, deed of trust, encumbrance, security interest, consensual lien, hypothecation, lease, transfer or divesture or otherwise of i) an interest in the Premises, (ii) the Borrower or (iii) a Controlling Interest (as defined in the Mortgage) in any entity controlling, managing or in control of the Borrower ("Transfer") without the written consent of Lender being first obtained, whether voluntarily, involuntarily, or by operation of law, then at the sole option of Lender, Lender may upon notice to the Borrower declare the entire unpaid principal balance together with accrued interest, due and payable in full. Any such payment shall be subject to the requirements, if any, in this Note providing for the payment of a prepayment premium in the event of a non-permitted Transfer.  A consent by Lender as to any one Transfer shall not be deemed to be a waiver of the right to require consent to a future Transfer. Notwithstanding the foregoing a Permitted Transfer shall be allowed on notice to Lender.

THE UNDERSIGNED ACKNOWLEDGES AND WARRANTS THAT IT HAS READ AND UNDERSTOOD THE PROVISIONS OF THIS SECTION AND INITIALS THIS SECTION AS PROOF OF THIS STATEMENT.

INITIAL HERE:

12.     Lender and Borrower intend in this Note to expressly and legally agree upon the rate of interest and manner of payment stated within it; provided that, and notwithstanding anything to the contrary herein contained, if said rate of interest or manner of payment exceed the maximum rate allowable under applicable law, neither Borrower nor Borrower's successors and assigns shall be obligated to pay such excess and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents.  If Lender shall collect amounts which are deemed to constitute interest and which would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the

Twelve Oaks Partners, LLC                                                                                                    v2
Promissory Note

3.

maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

13.    Borrower and all endorsers and guarantors of this Note hereby waive presentment, demand, protest, notice of non-payment, notice of protest, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of costs, expenses or losses, and interest thereon, and notice of interest on interest and late charges, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower, any endorser or any guarantor from any liability hereunder or under any related guaranty. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

14.    Lender and Borrower intend in this Note to expressly and legally agree upon the rate of interest and manner of payment stated within it; provided that, and notwithstanding anything to the contrary herein contained, if said rate of interest or manner of payment exceed the maximum rate allowable under applicable law, then Borrower is liable only for the payment of such legal maximum rate as allowed by law and payments previously received from Borrower in excess of such legal maximum rate are considered reductions to principal to the extent of the excess. It is further intended that if any provisions of this Note are held to be either partially or wholly invalid, illegal, unenforceable, or inoperative by a court of competent jurisdiction by reason of operation of law, in equity, or otherwise, the remaining provisions of this Note are not affected or impaired thereby, but remain valid and enforceable.

15.    This Note may be assigned by Lender from time to time by an endorsement hereon or by other writing. The obligations of Borrower hereunder may not be assigned by Borrower without the written consent thereto by Lender.

16.    Borrower by its execution of this Note, and Lender by its advance of principal in reliance on this Note, expect and intend that this Note be governed by and construed under the laws of the State of California, and Borrower consents to the jurisdiction of the State of California for all purposes, including the enforcement of this Note.

17.    WAIVER OF TRIAL BY JURY.   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CLAIM, CONTROVERSY, DISPUTE, ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS NOTE AND THE OTHER LOAN DOCUMENTS (INCLUDING WITHOUT LIMITATION ANY ACTIONS OR PROCEEDINGS FOR ENFORCEMENT OF THE LOAN DOCUMENTS) AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AND LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAVE RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THE OTHER LOAN DOCUMENTS AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. BORROWER AND LENDER WARRANT AND REPRESENT THAT EACH HAD THE OPPORTUNITY OF

REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS. NOTWITHSTANDING THE FOREGOING, EXCEPT FOR ANY ACTION BY LENDER AGAINST BORROWER FOLLOWING AN EVENT OF DEFAULT, ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES WHICH ARISES OUT OF OR RELATES TO THIS NOTE, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED AS PROVIDED IN SECTION 7.25 OF THE LOAN AGREEMENT.

18.    BORROWER HEREBY EXPRESSLY (i) WAIVES ANY RIGHTS IT MAY HAVE UNDER CALIFORNIA CIVIL CODE SECTION 2954.10 TO PREPAY THIS NOTE, IN WHOLE OR IN PART, WITHOUT PENALTY, UPON ACCELERATION OF THE MATURITY DATE, AND (ii) AGREES THAT IF, FOR ANY REASON, A PREPAYMENT OF ALL OR ANY PORTION OF THE PRINCIPAL AMOUNT OF THIS NOTE IS MADE, INCLUDING WITHOUT LIMITATION UPON OR FOLLOWING ANY ACCELATION OF THE MATURITY DATE BY LENDER ON ACCOUNT OF ANY DEFAULT BY BORROWER, THEN BORROWER SHALL BE OBLIGATED TO PAY CONCURRENTLY WITH SUCH PREPAYMENT THE PREPAYMENT PREMIUM SPECIFIED IN THIS NOTE. BY INITIALING THIS PROVISION IN THE SPACE PROVIDED BELOW, BORROWER HEREBY DECLARES THAT (1) LENDER'S AGREEMENT TO MAKE THE LOAN EVIDENCED BY THIS NOTE AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THIS NOTE AND THE LOAN AGREEMENT CONSTITUTES ADEQUATE CONSIDERATION FOR THIS WAIVER AND AGREEMENT AND HAS BEEN GIVEN INDIVIDUAL WEIGHT BY BORROWER AND LENDER, AND (2) BORROWER FULLY UNERSTANDS THE EFFECT OF THIS WAIVER AND AGREEMENT.

INITIAL HERE:

IN WITNESS WHEREOF, Borrower, intending to be legally bound hereby, has duly executed this Note the day and year first above written.

TWELVE OAKS PARTNERS, LLC,
a California limited liability company

By:  Ranco Realty Group, LLC
Its:  Managing Member

Name:  Randall W. Blanchard
Its:        Manager

Twelve Oaks Partners, LLC                                                                                        v2
Promissory Note

5

**EXHIBIT 2**



EXHIBIT NO. _5_
SNYDER
1/30/09
jmsteno.com

### DEED OF TRUST,
### ABSOLUTE ASSIGNMENT OF RENTS
### AND
### SECURITY AGREEMENT
### AND
### FIXTURE FILING

THIS INSTRUMENT (hereinafter referred to as "Deed of Trust"), is made and given this ___ day of June, 2007, by **TWELVE OAKS PARTNERS, LLC** a California limited liability company ("Borrower"), whose address is 40935 County Center Drive, Suite A, Temecula, CA 92591 to **FIRST AMERICAN TITLE INSURANCE COMPANY** ("Trustee"), whose address is 1900 Midwest Plaza, 801 Nicollet Mall, Minneapolis, MN 55402, for the benefit of **MARSHALL BANK, N.A.**, a national banking association ("Lender"), whose address is 225 South Sixth Street, Suite 2900 Minneapolis, MN 55402.

#### PRELIMINARY STATEMENT OF FACTS:

A.    Pursuant to a certain Development Loan Agreement by and among Borrower, Randall W. Blanchard ("Guarantor") and Lender dated of even date herewith (the "Loan Agreement") Lender has agreed to make a Loan to Borrower in the amount of up to FIFTY-NINE MILLION FIVE HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($59,590,000) (the "Loan") to refinance certain indebtedness and provide funds for development costs related to land consisting of approximately 630 acres located in the City of Temecula, Riverside County, California, on the Real Property (defined below).

B.    The Loan is evidenced by that certain Promissory Note from Borrower to the order of Lender of even date herewith in the original principal amount of FIFTY-NINE MILLION FIVE HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($59,590,000) (the "Note").

C.    The Note bears interest at a variable per annum rate of interest all as more fully set forth in the Note ("Interest Rate") except that during the period of and continuance of a default under the Note or Event of Default under this Deed of Trust, the Note shall bear interest at a per annum rate of interest of four percent (4%) percent in excess of the interest rate then in effect on the Note whether or not Lender has exercised its option to accelerate the maturity of the Note and declare the entire unpaid Indebtedness Secured Hereby (as hereinafter defined) due and payable as more fully set forth in the Note ("Default Rate").

D.    As security for the repayment of the Loan as evidenced by the Note Borrower is executing and delivering this Deed of Trust.

E.    The Note is payable in installments with a final installment payment of principal and interest due on the Maturity Date (as defined in the Note), or such earlier date as the Note may be declared due and payable by Lender in accordance with its terms.

F.    As used herein the term "Note Rate" shall mean the rate of interest then in effect on the Note whether the Interest Rate or Default Rate, as the case may be.

Twelve Oaks Partners, LLC
Deed of Trust

v2

1

G.      As security for the repayment of the Note, Guarantor is executing and delivering to Lender an absolute and unconditional Guaranty dated of even date herewith ("Guaranty").

NOW, THEREFORE, in consideration of the Loan evidenced by the Note and of the sum of One and 00/100 Dollar ($1.00) paid by Lender to Borrower, the receipt whereof is hereby acknowledged, and for the purposes aforesaid Borrower hereby GRANTS, BARGAINS, SELLS, TRANSFERS AND CONVEYS UNTO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, FOREVER, IN TRUST WITH POWER OF SALE, all of Borrower and GRANTS TO LENDER A SECURITY INTEREST IN all of Borrower's right, title and interest in and to the following properties (whether now owned or hereafter acquired or arising) hereinafter set forth (all the following being hereinafter collectively referred to as the "Premises"):

### A.
### REAL PROPERTY

All the tracts or parcels of real property lying and being in the County of Riverside, State of California, all as more fully described in Exhibit "A" attached hereto and made a part hereof, together with all the estates and rights in and to the real property and in and to lands lying in streets, alleys and roads adjoining the real property and all buildings, structures, improvements, fixtures and annexations, access rights, easements, rights of way or use, servitudes, licenses, tenements, hereditaments and appurtenances now or hereafter belonging or pertaining to the real property; together with all water rights (whether riparian, appropriative or otherwise whether or not appurtenant) now or hereafter relating to or used in connection with the real property, and all shares of stock, if any, evidencing such rights ("Real Property").

### B.
### BUILDINGS AND IMPROVEMENTS

All buildings and building improvements now or hereafter located on the Premises.

### C.
### PERSONAL PROPERTY

All machinery, fittings, fixtures, apparatus, equipment or articles of personal property now or hereafter owned by Borrower and now or hereafter attached to, located at or on, related to, or used in the operations of Borrower's business on the Premises including all such items used to supply heating, gas, electricity, air conditioning, water, light, waste disposal, power, refrigeration, ventilation, and fire and sprinkler protection; all maintenance supplies and repair equipment; all draperies, carpeting, floor coverings, screens, storm windows and window coverings, blinds, awnings, shrubbery and plants; all elevators, escalators and shafts, motors, machinery, fittings and supplies necessary for their use; all building materials and supplies now or hereafter delivered to the Premises all carpeting, furniture, fixtures, ranges, stoves, refrigerators, washers and dryers, and air conditioning units provided or to be provided to tenants for use in the occupancy of the apartment units in the Premises (it being understood that the enumeration of any specific articles of personal property shall in no way be held to exclude any items of personal property not specifically enumerated), as well as renewals, replacements, proceeds, additions, accessories, increases, parts, fittings, insurance payments, awards and substitutes thereof, together with all interest of Borrower in any such items hereafter acquired, as well as Borrower's interest in any lease, or conditional sales

Twelve Oaks Partners, LLC                                                                    v2
Deed of Trust

2

agreement under which the same is acquired, all of which personal property mentioned herein shall be deemed fixtures and accessory to the freehold and a part of the realty and not severable in whole or in part without material injury to the Premises.

## D.
## RECEIVABLES

All present and future rights to payment for goods sold or leased or for services rendered, with respect to the Premises and its operations and all receivables of whatever nature whatsoever which are not evidenced by Chattel Paper, Documents or Instruments.

## E.
## ACCOUNTS

All "Accounts" (as that item is defined in the Uniform Commercial Code (as hereinafter defined)) now owned or hereafter acquired with respect to the Premises.

## F.
## CHATTEL PAPER

All "Chattel Paper" (as that item is defined in the Uniform Commercial Code) now owned or hereafter acquired with respect to the Premises.

## G.
## DOCUMENTS

All "Documents" (as that item is defined in the Uniform Commercial Code) now or hereafter acquired with respect to the Premises.

## H.
## EQUIPMENT

All "Equipment" (as that item is defined in the Uniform Commercial Code) now owned or hereafter acquired with respect to the Premises.

## I.
## FIXTURES

All "Fixtures" (as that item is defined in the Uniform Commercial Code) now owned or hereafter acquired with respect to the Premises.

## J.
## GENERAL INTANGIBLES

All "General Intangibles" (as that item is defined in the Uniform Commercial Code) now owned or hereafter acquired with respect to the Premises.

**K.**
**GOODS**

All "Goods" (as that item is defined in the Uniform Commercial Code) now owned or hereafter acquired with respect to the Premises.

**L.**
**INSTRUMENTS**

All "Instruments" (as that item is defined in the Uniform Commercial Code) now or hereafter acquired with respect to the Premises.

**M.**
**INVESTMENT PROPERTY**

All "Investment Property" (as that term is defined in the Uniform Commercial Code) now owned or hereafter acquired.

**N.**
**RENTS, INCOME, LEASES AND PROFITS**

All rents, sales proceeds, income, contract rights, leases and profits now due or which may hereafter become due under or by virtue of any lease, license or agreement, whether written or verbal, for the use, occupancy, or sale of the Premises or any part thereof together with all tenant security deposits.

**O.**
**ESCROWS AND RESERVES**

All monies deposited with Lender pursuant to any reserve, escrow, deposit or cash collateral agreements executed by Borrower in favor of Lender together with any Deposit Accounts or Investment Property, if any, in which the aforesaid are deposited.

**P.**
**INSURANCE PROCEEDS**

All awards, payments, proceeds now or hereafter payable under any policy of insurance insuring the Premises including but not limited to the proceeds of casualty insurance, title insurance, business interruption/rents insurance or other insurance maintained with respect to the Premises.

**Q.**
**JUDGMENTS AND AWARDS**

All awards, compensation and settlements in lieu thereof made as a result of the taking by power of eminent domain of the whole or any part of the Premises, including any awards for damages sustained to the Premises, for a temporary taking, change of grade of streets or taking of access.

Twelve Oaks Partners, LLC
Deed of Trust

4

v2

## R.
## FILES AND RECORDS

All contracts, franchises, licenses, permits, management records, files, consents, governmental approvals and intangibles used, useful or required in the ownership and management of the Premises.

## S.
## PERMITS AND LICENSES

All development agreements (relating to the development of Real Property), soil reports, building permits; operating permits and licenses, variances, utility permits and other permits, licenses and agreements relating to the construction, equipping, operation or maintenance of the Premises, including without limitation, all warranties and contract rights.

## T.
## CONSTRUCTION CONTRACTS

Each contract or agreement for the design, construction, furnishing and equipping of any improvements to be constructed on the Real Property, together with all rights, title and interest of Borrower in and to any existing or future changes, extensions, revisions, modifications, guarantees or performance, or warranties of any kind thereunder.

## U.
## PLANS AND SPECIFICATIONS

All plans and specifications, all surveys, site plans, soil reports, working drawings and papers, relating to the Premises, including without limitation, all architectural drawings and site plans.

## V.
## BUILDING SUPPLIES

All building supplies and materials ordered or purchased for use in connection with the construction and equipping of the improvements on the Premises.

## W.
## SERVICE AGREEMENTS

All rights and interests of Borrower in and under any and all service contracts and other agreements relating to the servicing, operation, maintenance, and repair of the Premises or the buildings and improvements on the Real Property.

## X.
## LOAN AND SALES PROCEEDS

All proceeds, contract rights and payments payable to Borrower under any loan commitment for financing of the Premises, or under any sales contracts of the Premises or any part thereof, together with all earnest money or reservation deposits from buyers or prospective buyers.

Twelve Oaks Partners, LLC
Deed of Trust

v2

5

## Y.
## LOGO

All right and interest in and to any and all trademarks, tradenames, corporate names, franchised names, business names, fictitious names, trade styles, logos, service marks, and other business identifiers used in the operation of the Premises.

## Z.
## ACCOUNTS AND CONTRACT RIGHTS

All accounts, contract rights and rights to payments arising out of the operation of any facilities on the Premises including but not limited to payments for the rental or sale or use of rooms, for goods sold or leased, for services rendered, whether or not evidenced by an Instrument or Chattel Paper, whether or not yet earned by performance, for the rental, sale or use of any equipment, from vending machines, all payments from any consumer credit/charge card organization, whether or not now existing or owed or hereinafter credited or owed, and all proceeds of the foregoing, whether cash or non-cash.

## AA.
## WATER RIGHTS

All water rights, water stock, and irrigation rights accruing to or necessary for the use of the Premises including but not limited to all water rights, irrigation rights, ditch and ditch rights, reservoir and reservoir rights, stock or interest in water, irrigation or ditch companies.

## BB.
## MINERAL RIGHTS

All minerals, mineral rights, royalties, oil and gas rights and profits arising from or accruing to the Premises.

## CC.
## WATER AND SEWER FACILITIES

All of the water, sanitary and storm sewer systems now or hereafter owned by Borrower which are now or hereafter located by, over, and/or upon the Premises or any part and parcel thereof, and which water system includes all water mains, service laterals, hydrants, valves and appurtenances, and which sewer system includes all sanitary sewer lines, including mains, laterals, manholes and appurtenances.

The above shall also include all proceeds, products, accessions, additions and supporting obligations thereto. It is specifically understood that the enumeration of any specific articles of property shall in nowise exclude or be held to exclude any items of property not specifically mentioned. All of the property hereinabove described, real, personal and mixed, whether affixed or annexed or not, and all rights hereby conveyed and mortgaged are intended to be as a unit and are hereby understood and agreed and declared to be appropriated to the use of the Premises, and shall for the purposes of this Deed of Trust be deemed to be real estate and conveyed and mortgaged hereby.

Twelve Oaks Partners, LLC
Deed of Trust

v2

6

## DD.
## ADDITIONAL PROPERTY RIGHTS

All general intangibles relating to design, development, operation, management and use of the Real Property and construction of improvements, including, but not limited to: (i) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction, maintenance or operation of the improvements; (ii) all permits, licenses, approvals, consents, authorizations, and agreements issued or obtained in connection with the use, occupancy or operation of the Real Property; (iii) all rights as a declarant (or its equivalent) under any covenants, conditions and restrictions or other matters of record affecting the Real Property; (iv) all materials prepared for filing or filed with any governmental agency; (v) all rights under any contract in connection with the development, design, use, operation, management and construction of Real Property and/or Improvements thereon; and (vi) all books and records prepared and kept in connection with the acquisition, construction, operation and occupancy of the Real Property and/or Improvements thereon.

All reserves, deferred payments, deposits, refunds, cost savings, letters of credit and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of all or any portion of the Real Property and/or the Improvements thereon, including, without limitation, any property tax rebates now owing or hereafter payable.

The above shall also include all proceeds, products, accessions, additions and supporting obligations thereto. It is specifically understood that the enumeration of any specific articles of property shall in nowise exclude or be held to exclude any items of property not specifically mentioned.  All of the property hereinabove described, real, personal and mixed, whether affixed or annexed or not, and all rights hereby conveyed and mortgaged are intended to be as a unit and are hereby understood and agreed and declared to be appropriated to the use of the Premises.

THIS CONVEYANCE IS MADE IN TRUST, HOWEVER, to secure

(i)    payment by Borrower, its successors and assigns, to Lender, its successors and assigns, the sum of Fifty-nine Million Five Hundred Ninety Thousand and no/100 Dollars ($59,590,000), according to the terms of the Note, or so much as is from time to time disbursed thereon, the terms and conditions of which are incorporated herein by reference and made a part hereof, together with any extensions or renewals thereof, due and payable with interest thereon at the Note Rate, the balance of said principal sum together with interest thereon being due and payable in any event on the Maturity Date or, if applicable, as it may be extended pursuant to the Loan Agreement; and

(ii)   payment to Lender, its successors and assigns, at the times demanded and with interest thereon at the Note Rate, all sums advanced (a) in protecting the lien of this Deed of Trust, (b) in payment of taxes on the Premises, (c) in payment of insurance premiums covering improvements thereon, (d) in payment of principal and interest on prior liens, (e) in payment of expenses and attorneys

Twelve Oaks Partners, LLC
Deed of Trust

7

fees herein provided for, and (f) all sums advanced for any other purpose authorized herein; and

(iii) the keeping of and performance of the covenants and agreements herein contained; and

(iv) the keeping of and performance of all of the terms and conditions of any instrument given as collateral for the Loan; and

(v) the keeping of and performance of all of the terms and conditions of the Loan Agreement.

The Note and all such sums, together with interest thereon, and the above obligations being collectively referred to as the "Indebtedness Secured Hereby".

AND IT IS FURTHER COVENANTED AND AGREED AS FOLLOWS:

1<br>GENERAL COVENANTS, AGREEMENTS, WARRANTIES

**1.1    Payment of Indebtedness:  Observance of Covenants.** Borrower shall duly and punctually pay each and every installment of principal and interest on the Note and all other Indebtedness Secured Hereby, as and when the same shall become due, and shall duly and punctually perform and observe all of the covenants, agreements and provisions contained herein, in the Note and any other instrument given as security for the payment of the Note.

**1.2    Maintenance: Repairs.** Borrower shall not abandon the Premises, shall keep and maintain the Premises in good condition, repair and operating condition, normal wear and tear excluded, free from any waste or misuse, and shall promptly repair or restore any buildings, improvements or structures now or hereafter on the Real Property which may become damaged or destroyed to their condition prior to any such damage or destruction. Borrower further agrees to complete the Premises and, excepting as so provided in the Loan Agreement, it will not expand any improvements on the Premises, erect any new improvements or make any material alterations in any improvements which shall alter the basic structure, adversely affect the market value or change the existing architectural character of the Premises, nor remove or demolish any improvements without suitable replacement thereof, and shall complete within a reasonable time any buildings now or at any time in the process of construction or remodeling on the Premises; provided nothing herein shall preclude Borrower from constructing improvements necessary or desirable to the use of the Premises for Borrower's business purposes which are non-structural in nature and which do not constitute material alterations to the Premises or affect the nature of use, structure or utility of the Premises or decrease the market value of the Premises.

**1.3    Compliance with Laws.** Borrower shall comply with all requirements of law, municipal ordinances and regulations affecting the Premises, shall comply with all private restrictions and covenants affecting the Premises and shall not acquiesce in or seek any rezoning classification affecting the Premises.

**1.4    Payment of Operating Costs: Prior Deed of Trusts and Liens.** Borrower shall pay all operating costs and expenses of the Premises, shall keep the Premises free from levy,

Twelve Oaks Partners, LLC
Deed of Trust

8

v2

attachment, mechanics', materialmen's and other liens ("Liens") and shall pay when due all indebtedness which may be secured by this Deed of Trust, lien or charge on the Premises.

1.5    Payment of Impositions. Borrower shall pay when due and in any event before any penalty attaches all taxes, assessments, governmental charges, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever assessed or charged against or constituting a lien on the Premises or any interest therein ("Impositions") and will upon demand furnish to Lender proof of the payment of any such Impositions. In the event of a court decree or an enactment after the date hereof by any legislative authority of any law imposing upon a Lender the payment of the whole or any part of the Impositions herein required to be paid by Borrower, or changing in any way the laws relating to the taxation of deed of trusts or debts secured by deed of trusts or a Lender's interest in Premises, so as to impose such Imposition on Lender or on the interest of Lender in the Premises, then, in any such event, Borrower shall bear and pay the full amount of such Imposition, provided that if for any reason payment by Borrower of any such Imposition would be unlawful, or if the payment thereof would constitute usury or render the Indebtedness Secured Hereby wholly or partially usurious, Lender, at its option, may declare the whole sum secured by this Deed of Trust with interest thereon to be immediately due and payable, without prepayment premium, or Lender, at its option, may pay that amount or portion of such Imposition as renders the Indebtedness Secured Hereby unlawful or usurious, in which event Borrower shall concurrently therewith pay the remaining lawful and non-usurious portion or balance of said Imposition.

1.6    Contest of Impositions, Liens and Levies. Borrower shall not be required to pay, discharge or remove any Imposition or any Lien so long as Borrower shall in good faith contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection of the Lien or Imposition so contested and the sale of the Premises, or any part thereof, to satisfy the same, provided that Borrower shall, prior to the date such Lien or Imposition is due and payable, have given such reasonable security as may be demanded by Lender to insure such payments plus interest or penalties thereon, and prevent any sale or forfeiture of the Premises by reason of such nonpayment. Any such contest shall be prosecuted with due diligence and Borrower shall promptly after final determination thereof pay the amount of any such Lien or Imposition so determined, together with all interest and penalties which may be payable in connection therewith. Notwithstanding these provisions Borrower shall (and if Borrower shall fail so to do, Lender, may but shall not be required to) pay any such Lien or Imposition notwithstanding such contest if in the reasonable opinion of Lender, the Premises shall be in jeopardy or in danger of being forfeited or foreclosed.

1.7    Protection of Security. Borrower shall promptly notify Lender of and appear in and defend any suit, action or proceeding that affects the Premises or the rights or interest of Lender hereunder and Lender may elect to appear in or defend any such action or proceeding. Borrower agrees to indemnify and reimburse Lender from any and all loss, damage, expense or cost arising out of or incurred in connection with any such suit, action or proceeding, including costs of evidence of title and reasonable attorney's fees and such amounts together with interest thereon at the Note Rate shall become additional "Indebtedness Secured Hereby" and shall become immediately due and payable.

1.8    Financial Statements. Borrower shall furnish or cause to be furnished to Lender the following information at the following times:

Twelve Oaks Partners, LLC
Deed of Trust

v2

(a)    as soon as available, and in any event within one hundred twenty (120) days after the end of each calendar year, a copy of the annual financial statements of Borrower, which shall include the balance sheet of Borrower as at the end of such year and related statements of income and expenses, statements of changes in financial position, a statement of changes in capital accounts and a statement of allocation of distribution of profits and losses of Borrower prepared by a Certified Public Accountant, all in reasonable detail, compiled in accordance with generally acceptable accounting principles ("GAAP") (or tax accounting reconciled to GAAP) by a reputable accounting firm.  Such statements shall be accompanied by the annual federal income tax returns of Borrower, including all schedules, for the preceding taxable year as filed with the Internal Revenue Service unless an extension has been obtained for filing taxes and then within thirty (30) days after final filing.

(b)    as soon as available, and in any event within one hundred twenty (120) days after the close of each calendar year, the current financial statement of the Guarantor which statement shall include an itemization of all assets and liabilities scheduled by item and type, all investments and contingent liabilities and adequate to disclose the Guarantor's net worth at such point in time. Such financial statement shall be personally certified and shall be accompanied by the annual federal income tax return including all schedules, for the preceding taxable year as filed with the Internal Revenue Service unless an extension for filing has been obtained in which event the income tax return shall be provided within thirty (30) days of the date of filing.

(c)    as soon as available, and within thirty (30) days after the end of each quarter, a copy of the quarterly financial statements of each of Borrower each to include the balance sheet of Borrower as at the end of such quarter and related statements of income and expenses, statement of changes in financial position, a statement of changes in capital accounts and a statement of allocation of distribution of profits and losses of Borrower, all in reasonable detail, prepared in accordance with GAAP (or tax accounting reconciled to GAAP).

In the event Borrower fails to furnish any such statements in addition to any other remedies set forth in this Deed of Trust or by law, available to Lender following an Event of Default, Lender may cause an audit to be made of the respective books and records at the sole cost and expense of Borrower. Lender also shall have the right to examine at their place of safekeeping at reasonable times all books, accounts and records relating to the operation of the Premises.

      1.9    Additional Assurances. Borrower agrees upon reasonable request by Lender to execute and deliver such further instruments, deeds and assurances including financing statements under the Uniform Commercial Code and will do such further acts as may be necessary or proper to carry out more effectively the purposes of this Deed of Trust and without limiting the foregoing, to make subject to the lien hereof any property agreed to be subjected hereto or covered by the granting clause hereof, or intended so to be. Borrower agrees to pay any recording fees, filing fees, note taxes, mortgage registry taxes or other charges arising out of or incident to the filing or recording of this Deed of Trust, such further assurances and instruments and the issuance and delivery of the Note.

      1.10   Current Compliance With Laws. The Premises as improved on the date hereof, comply with all material requirements of laws, including requirements of any Federal, State, County, City or other governmental authority having jurisdiction over Borrower or the Real Property and including, but not limited to, any applicable zoning, occupational safety and

Twelve Oaks Partners, LLC
Deed of Trust

v2

health, the Americans with Disability Act, energy and environmental laws, ordinances and regulations; and Borrower has obtained all necessary consents, permits and licenses to construct, occupy and operate the Premises for its intended purposes.

1.11   Title. Borrower is the lawful owner of and has good and marketable fee simple absolute title to the Real Property and will warrant and defend title to the same free of all liens and encumbrances, other than the encumbrances permitted by Lender under Lender's Policy of title insurance issued to Lender in connection with this Deed of Trust and has good right and lawful authority to grant, bargain, sell, convey, mortgage and grant a security interest in the Premises as provided herein.

1.12   Development Loan Agreement. This Deed of Trust secures an obligation incurred for the construction of an improvement on land and is a "construction mortgage" as that term is used in Section 9334(h) of the California Uniform Commercial Code. This Deed of Trust is the deed of trust referred to in and is also given as security for the due and punctual performance, observance and payment by Borrower of the terms and conditions set forth in that certain Loan Agreement of even date herewith between Borrower and Lender the terms and conditions of which are incorporated herein by reference. In addition to its remedies hereunder, Lender may, but shall not be required to, avail itself of any or all of the rights and remedies available to it under the Loan Agreement, and any sums expended by Lender in availing itself of such rights and remedies shall bear interest thereon at the rate specified in the Loan Agreement and shall be so much additional Indebtedness Secured Hereby, and shall be payable to Lender immediately upon demand; provided that, no such payment by Lender shall be considered as waiving the event of default.

1.13   Personal Property Replacement. Borrower will keep the personal property in good order and repair and condition and will maintain adequate reserves for replacement of the same. As and when any item of personal property becomes worn or obsolete Borrower shall replace the same with a replacement item of personal property of same utility and value.

1.14   Loan Agreement. This Deed of Trust is the deed of trust referred to in and is also given as security for the due and punctual performance, observance and payment by Borrower of the terms and conditions set forth in that certain Loan Agreement of even date herewith between Borrower and Lender the terms and conditions of which are incorporated herein by reference. In addition to its remedies hereunder, Lender may, but shall not be required to, avail itself of any or all of the rights and remedies available to it under the Loan Agreement, and any sums expended by Lender in availing itself of such rights and remedies shall bear interest thereon at the rate specified in the Loan Agreement and shall be so much additional Indebtedness Secured Hereby, and shall be payable to Lender immediately upon demand; provided that, no such payment by Lender shall be considered as waiving the event of default.

1.15   Development Agreement. Borrower will faithfully abide by, perform and discharge each and every obligation, covenant and agreement imposed upon Borrower pursuant to any agreements with third parties including the City of Temecula and County of Riverside, California, any municipal agency or governmental agency (collectively the "Development Agreements"); enforce and secure the performance of each and every obligation, covenant and condition and agreement of the City of Temecula under the Development Agreements; not modify, alter or consent to any change in the Development Agreements; not terminate the Development Agreements or accept the surrender thereof or

Twelve Oaks Partners, LLC
Deed of Trust

11

v2

discharge the City of Temecula from its obligations thereunder. Should Borrower fail to perform, comply with the discharge of any obligations of Borrower under the Development Agreements or fail to keep or perform any of its covenants in this Section, or should Lender become aware of a failure on the part of Borrower to so perform or comply with the discharge of such obligations, Lender may, but shall not be obligated to, upon ten (10) days notice to Borrower (notice not being required if immediate action is necessitated and then such notice as is reasonable under the circumstances), and without waiving or releasing Borrower from any obligation herein contained, remedy such failure and Borrower agrees to repay upon demand all sums incurred by Lender in remedying any such failure together with interest at the Note Rate and which shall become so much additional Indebtedness Secured Hereby.

      1.16   <u>Compliance With Americans With Disabilities Act</u>. Borrower covenants and agrees that it will comply with the requirements of the Americans with Disabilities Act, as the same may be amended from time to time, during the entire term of the Loan and that it will comply with any requirements established by any federal, state or local governmental authorities having jurisdiction over such matters. All future maintenance, renovation, repair and construction conducted on the Premises shall all be completed in accordance with the Americans with Disabilities Act. Failure to comply with the provisions of the Americans with Disabilities Act shall constitute an Event of Default under the terms of this Deed of Trust and shall entitle Lender to exercise all remedies available to it hereunder.

      1.17   <u>Special Improvement District</u>. Borrower shall provide Lender notice of any proposal to include the Premises in any municipality, special district, special improvement district, local improvement district, quasi-municipal corporation, or other political subdivision that may impose a lien for payment of the assessments of the district after the date of this Deed of Trust. Borrower shall give Lender prompt written notice of (a) the proposed creation of any such district of any nature; or (b) any action in respect to such district which might affect the Premises, including, without limitation, any proposed service plan or modification of such plan, proposed organization of such district and election in regard to such organization, the proposed issuance of bonds by such district and the proposed inclusion of the Premises in any such district and will not consent to such inclusion without Lender's consent to the extent consent is required.

2.
INSURANCE AND ESCROWS

      2.1   <u>Insurance</u>. Borrower shall obtain or caused to be obtained  and keep in full force and effect during the term of this Deed of Trust at Borrower's sole cost and expense, the following policies of insurance:

      <u>All Risk</u>. All risk/open perils special form property insurance with extended coverages including any building contents, sprinkler coverage, Contingent Operations of Building Laws/Ordinance or Law Endorsement (including demolition cost, loss to undamaged portions of any buildings and increased cost of construction) with limits of 100% replacement cost and with no co-insurance provision or if the insurance carrier requires, co-insurance provisions with an agreed amount endorsement in amount acceptable to Lender;

      <u>Boiler and Pressure Vessels</u>. Insurance against loss or damage from i) leakage of sprinkler systems and ii) explosion of steam boilers, air conditioning equipment, high

Twelve Oaks Partners, LLC
Deed of Trust

12

v2

pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in any improvements on the Real Property and including broad form boiler and machinery insurance (without exclusion for explosion) covering all boilers or other pressure vessels, machinery and equipment (including electrical equipment, sprinkler systems, heating and air conditioning equipment, refrigeration equipment and piping) located in, on or about the Real Property and any improvements thereon in an amount at least equal to the full replacement cost of such equipment and the building or buildings housing the same;

Seismic  -  If the Premises are located within seismic zones 3 or 4 (as defined by the latest edition of the Uniform Building Code, Seismic Zone Map) and if the Probable Maximum Loss (PML) estimate exceeds 20% as a percentage of the current replacement cost of the Premises and Lender determines in its sole discretion to make the Loan, then Lender may require earthquake insurance as a condition to funding the Loan in the lesser of i) the full replacement cost of the Premises or ii) the maximum amount obtainable, provided that any such coverage will only be required if such requirement is consistent with what institutional lenders are then requiring for comparable properties in the same geographic region.

Flood. Flood insurance if any part of the Real Property now (or subsequently determined to be) is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and amendment or successor act thereto) in an amount at least equal to the lesser of the full replacement cost of all buildings and equipment on the Real Property, the outstanding principal amount of the Note or the maximum limited of coverage available with respect to the buildings and equipment under said Act;

Rents/Income. Rents Loss or Business Interruption insurance covering risk of loss due to the occurrence of any hazards insured against under the required fire and extended coverage insurance in an amount equal to one (1) year's loss of income as such income may change from time to time due to changes in income from the Premises;

CGL. Commercial general public liability insurance (including product liability, completed operations, contractual liability, host liquor liability, broad form property damage, and personal injuries, including death resulting therefrom) and with combined single limit and general aggregate coverage for personal and bodily injury and property damage of at least $1,000,000.00 for each occurrence, $2,000,000.00 general aggregate and with $2,000,000.00 excess liability coverage.

Maximum deductible on all coverages and policies shall be no greater than $10,000.00. The insurance carrier must be rated A, Class XII, or better, by Best's Rating Service. Such insurance policies shall be written on forms and with insurance companies satisfactory to Lender, shall be in amounts sufficient to prevent Borrower from becoming a co-insurer of any loss thereunder, shall insure Lender as a first mortgagee on the casualty and business interruption/loss of rents coverage under a standard mortgagee clause and shall name Lender as an "additional insured" on all required liability coverages and policies. Insurance certificates evidencing such insurance and evidence of payment of premiums thereon and written agreements by the insurer or insurers therein to give Lender thirty (30) days' prior written notice of any intention to cancel. If no such copy is available, Lender will accept a binder for a period not to exceed ninety (90) days. Borrower shall, within thirty (30) days

Twelve Oaks Partners, LLC
Deed of Trust

13

v2

prior to the expiration of any such policy, deliver insurance certificates evidencing the renewal of such insurance together with evidence of the payment of current premiums therefor. Any vacancy, change of title, tenant occupancy or use, physical damage, additional improvements or other factors affecting any insurance contract must be promptly reported to Lender. All binders, certificates of insurance, and original or certified copies of policies must name Borrower as a named insured, or as an additional insured, must include the complete and accurate property address and must bear the original signature of the issuing insurance agent. In the event of a foreclosure or trustee's sale under the Deed of Trust or any acquisition of the Premises by Lender all such policies and any proceeds payable therefrom, whether payable before or after a foreclosure sale, or during the period of redemption, if any, shall become the absolute property of Lender to be utilized at its discretion.  In the event of foreclosure or the failure to obtain and keep any required insurance Borrower empowers Lender to effect the above insurance upon the Premises at Borrower's expense and for the benefit of Lender in the amounts and types aforesaid for a period of time covering the time of redemption from sale, and if necessary therefor, to cancel any or all existing insurance policies. Borrower agrees to pay Lender such fees as may be permitted under applicable law for the costs incurred by Lender in determining, from time to time, whether the Premises are located within an area having special flood hazards. Such fees shall include the fees charged by any organization providing for such services.

Borrower will give Lender prompt notice of any damage to or destruction of the Premises, and in case of loss covered by policies of insurance Lender (whether before or after foreclosure sale) is hereby authorized at its option, upon ten (10) days prior written notice to Borrower, to settle and adjust any claim arising out of such policies and collect and receipt for the proceeds payable therefrom; provided, that Borrower may itself adjust and collect for any losses arising out of a single occurrence aggregating not in excess of $50,000.00. Any expense incurred by Lender in the adjustment and collection of insurance proceeds (including the cost of any independent appraisal of the loss or damage on behalf of Lender) shall be reimbursed to Lender first out of any proceeds. The proceeds or any part thereof shall be applied at the discretion of Lender to reduction of the Indebtedness Secured Hereby then most remotely to be paid, whether due or not, without the application of any prepayment premium, or to the restoration or repair of the Premises. Any application of insurance proceeds shall not extend or postpone the due dates of the monthly installments payable under the Note or change the amount of such installments.

     2.2 <u>Escrows</u>. Upon the occurrence of an Event of Default not cured within the time provided in this Deed of Trust, and determination by Lender that it elects to enforce this Section 2.2, and upon Lender's written request, Borrower shall pay to Lender, together with and in addition to the payments of principal and interest payable under the terms of the Note on the dates when any payment on either principal or interest must be made by the terms of the Note, until the Note is fully paid or until notification from Lender to the contrary, an amount reasonably sufficient (as estimated by Lender) to provide Lender with funds to pay such taxes, assessments, insurance premiums, rents and other charges next due so that Lender will have sufficient funds on hand to pay same thirty (30) days before whichever of the following dates first occurs:  (1) the date on which they become past due; (2) the date on which there is any discount lost; or (3) the date on which there is additional interest, or penalty charged. Upon demand of Lender, Borrower shall deliver to Lender such additional monies as are necessary to make up any deficiency in the amount necessary to enable Lender to pay the foregoing. All such payments under this section shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Lender and no interest shall be payable

thereon. In the event of a default hereunder, Lender may apply any funds of Borrower then in Lender's possession under this section against the Indebtedness Secured Hereby, in such manner as Lender shall determine. Upon an assignment of this Deed of Trust, Lender shall have the right, but not the obligation, to assign and pay over the balance of such deposits in its possession to the assignee, and Lender shall thereupon be completely released from all liability with respect to such deposits, and Borrower shall thereafter look solely to the assignee or transferee with respect thereto. This provision shall apply to each and every transfer of such deposits to a new assignee. Upon the full payment of the Indebtedness Secured Hereby, the balance of Borrower's deposits then in Lender's possession shall be paid over to the record owner of the Real Property at the time of payment and no other party shall have any right or claim thereto.

### 3.
### UNIFORM COMMERCIAL CODE SECURITY AGREEMENT

3.1 <u>Security Agreement</u>. This Deed of Trust shall constitute a security agreement as defined in the California Uniform Commercial Code ("Uniform Commercial Code") in the items described in the Granting Clauses of this Deed of Trust ("Collateral"). Any Collateral installed in or used in the Premises are to be used by Borrower solely for Borrower's business purposes or as the equipment and fixtures leased or furnished by Borrower, as landlord, to tenants of the Premises and such Collateral will be kept at the buildings on the Real Property and will not be removed therefrom without the consent of Lender and may be affixed to such buildings but will not be affixed to any other real estate. The remedies of Lender hereunder are cumulative and separate, and the exercise of any one or more of the remedies provided for herein or under the Uniform Commercial Code shall not be construed as a waiver of any of the other rights of Lender including having any Collateral deemed part of the realty upon any foreclosure thereof. If notice to any party of the intended disposition of the Collateral is required by law in a particular instance, such notice shall be deemed commercially reasonable if given at least ten (10) days prior to such intended disposition and may be given by advertisement in a newspaper accepted for legal publications either separately or as part of a notice given to foreclose the Premises or may be given by private notice if such parties are known to Lender. Neither the grant of a security interest pursuant to this Deed of Trust nor the filing of a financing statement pursuant to the Uniform Commercial Code shall ever impair the stated intention of this Deed of Trust that all Collateral comprising the Premises and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the Premises conveyed hereunder irrespective of whether such item is physically attached to the Real Property or any such item is referred to or reflected in a financing statement. Borrower will on demand deliver all financing statements that may from time to time be required by Lender to establish, perfect and continue the priority of Lender's security interest in the Collateral and shall pay all expenses incurred by Lender in connection with the renewal or extensions of any financing statements executed in connection with the Premises; and shall give advance written notice of any proposed change in Borrower's name, identity or structure and will execute and deliver to Lender prior to or concurrently with such change all additional financing statements that Lender may require to establish and perfect the priority of Lender's security interest.

3.2 <u>Authorization to File</u>. Borrower expressly authorizes Lender to file any and all financing statements required to perfect any security interests hereunder. Borrower agrees to provide Lender advance written notice of (i) any change of Borrower's name or (ii) any change of Borrower's jurisdiction.

Twelve Oaks Partners, LLC
Deed of Trust

v2

3.3    Maintenance Of Premises. Subject to the provisions of this section, in any instance where Borrower in its sound discretion determines that any Collateral subject to a security interest under this Deed of Trust has become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary for the operation of the Premises, Borrower may, at its expense, remove and dispose of it and substitute and install other items not necessarily having the same function, provided, that such removal and substitution shall not impair the operating utility and unity of the Premises. All substituted items shall become a part of the Premises and subject to the lien of the Deed of Trust. Any amounts received or allowed Borrower upon the sale or other disposition of the removed items of Collateral shall be applied first against the cost of acquisition and installation of the substituted items. Nothing herein contained shall be construed to prevent any tenant from removing from the Premises trade fixtures, furniture and equipment installed by the tenant and removable by the tenant under its terms of the lease, on the condition, however, that the tenant shall at its own cost and expense, repair any and all damages to the Premises resulting from or caused by the removal thereof.

3.4    Fixture Filing. THIS INSTRUMENT CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN EXHIBIT A HERETO.    THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS A FEE AND LEASEHOLD DEED OF TRUST AND A FIXTURE FILING. BORROWER IS THE OWNER OF THE FEE INTEREST IN EXHIBIT A HERETO.

3.5    Required Information. For purposes of the Uniform Commercial Code the following information is furnished:

(a)    The name and address of the record owner of the real estate described in this instrument is:

Twelve Oaks Partners, LLC
40935 Country Center Drive, Suite A
Temecula, CA 92591

(b)    The name and address of the Debtor is:

Twelve Oaks Partners, LLC
40935 Country Center Drive, Suite A
Temecula, CA 92591

(c)    Debtor's Federal Tax ID No. 20-8341701

(d)    Debtor is organized under the laws of the State of California.

(e)    Debtor is a limited liability company.

(f)    Debtor's Organizational Number is 200704510060.

(g)    the name and address of the Secured Party is:

Marshall Bank, N.A.
225 South Sixth Street
Suite 2900
Minneapolis, Minnesota 55402

(h)     Information concerning the security interest evidenced by this
instrument may be obtained from the Secured Party at its address
above:

(i)     This document covers goods which are or are to become fixtures.

4.
APPLICATION OF INSURANCE AND AWARDS

4.1    Damage or Destruction of the Premises. Borrower shall give to Lender prompt
notice of any damage to or destruction of the Premises and in case of loss covered by policies
of insurance Lender is hereby authorized at its option to settle and adjust any claim arising
out of such policies and collect and receipt for the proceeds payable therefrom, provided,
that Borrower may itself adjust and collect for any losses arising out of a single occurrence
aggregating not in excess of Fifty Thousand and 00/100 ($50,000.00) Dollars. Any expense
incurred by Lender in the adjustment and collection of insurance proceeds (including the cost
of any independent appraisal of the loss or damage on behalf of Lender) shall be reimbursed
to Lender first out of any proceeds. Subject to Section 4.3 the proceeds or any part thereof
shall be applied to reduction of the Indebtedness Secured Hereby then most remotely to be
paid, whether due or not, without the application of any prepayment premium, or to the
restoration or repair of the Premises, the choice of application to be solely at the discretion
of Lender.

4.2    Condemnation. Borrower shall give to Lender prompt notice of any action, actual
or threatened, in condemnation or eminent domain.  Borrower hereby irrevocably assigns,
transfers, and sets over to Lender, to the extent of the remaining unpaid Indebtedness Secured
Hereby, the entire proceeds of any award, payment or claim for damages for all or any part of
the Premises taken or damaged, whether temporary or permanent, under the power of eminent
domain or condemnation, and authorizes Lender to intervene in any such action in the name of
Borrower and to collect and receive from the condemning authorities and give proper receipts
and acquittances for such proceeds.  Any expenses incurred by Lender in intervening in such
action or collecting such proceeds shall be reimbursed to Lender first out of the proceeds. The
proceeds or any part thereof shall be applied upon or in reduction of the Indebtedness Secured
Hereby then most remotely to be paid, whether due or not, without the application of any
prepayment premium, or to the restoration or repair of the Premises, the choice of application
to be solely at the discretion of Lender.

4.3    Application of Insurance Proceeds to Debt. Upon an insured casualty and
provided:

(i)     no Event of Default exists hereunder,

(ii)    the Loan to value ratio of the Real Property will remain at 65.0% or less
as verified by an update to the appraisal,

Twelve Oaks Partners, LLC
Deed of Trust

17

v2

(iii)   the Premises can be restored to substantially its original architectural design and economic use (collectively, "Restoration"),

(iv)   the insurance proceeds received are sufficient to defray the entire cost of such Restoration or if not, Borrower deposits with Lender good funds equal to the difference between the cost of Restoration and the amount of proceeds deposited with Lender,

(v)    Lender is provided architectural plans and specifications for its reasonable approval with respect to the Restoration,

(vi)   Lender is provided a current feasibility study or amendment to any feasibility study previously delivered to Lender concluding that the net operating income of the Real Property after such Restoration will continue to provide a loan to value ratio of 65.0% or less,

then Lender shall make the proceeds of any insurance available to the Restoration of the Project to be disbursed under prudent lending safeguards including, but not limited to, 10% retainage, requirement for lien waivers for each disbursement, affirmative mechanic lien downdates to its lender's title policy and the like. Otherwise, Lender may apply the proceeds to the Restoration of the Project or to the repayment of the Indebtedness Secured Hereby in its sole option and election. Any partial prepayment shall not reduce or suspend any required payments of either principal or interest and shall not reduce the amount of any scheduled installment payment on the Indebtedness Secured Hereby.

    4.4    Application of Condemnation Proceeds to Debt. Upon a taking of any portion of the Real Property by eminent domain ("Taking") at the option of Lender the proceeds shall be applied to the repayment of the Loan provided:

(i)    no Event of Default then be existing,

(ii)   the loan to value ratio of the Real Property after such Restoration will remain at 65.0% or less as verified by an update to the appraisal,

(iii)  the Real Property can be restored to substantially its original architectural design and economic use with such Restoration,

(iv)   the proceeds received from the Taking are sufficient to defray the entire cost of such Restoration or if not, Borrower deposits with Lender good funds equal to the difference between the cost of Restoration and the amount of proceeds deposited with Lender,

(v)    Lender is provided architectural plans and specifications for its reasonable approval with respect to the Restoration,

(vi)   Lender is provided a current feasibility study or amendment to any feasibility study previously delivered to Lender concluding that the net operating income of the Real Property after such Restoration will continue to provide a loan to value ratio of 65.0% or less,

then Lender shall make the proceeds of any Taking available to the Restoration of the Project to be disbursed under prudent lending safeguards including, but not limited to, 10% retainage, requirement for lien waivers for each disbursement, affirmative mechanic lien downdates to its lender's title policy and the like. Otherwise, Lender may apply the proceeds to the Restoration of the Premises or to the repayment of the Indebtedness Secured Hereby in its sole option and election. Any partial prepayment shall not reduce or suspend any required payments of either principal or interest and shall not reduce the amount of any scheduled installment payment on the Indebtedness Secured Hereby.

    4.5  <u>Allocation of Awards</u>. Borrower unconditionally and irrevocably waives all rights of a property owner under Section 1265.225(a) of the California Code of Civil Procedure or any successor statute providing for the allocation of condemnation proceeds between a property owner and a lien holder.

    4.6  <u>Waiver</u>. Borrower specifically, unconditionally and irrevocably waives any rights it may have under any California case and/or statutory law, heretofore or hereafter in effect, which provides that a lender on a debt secured by improved real property must demonstrate that its security has been impaired as a result of a casualty before requiring that any or all insurance proceeds be used to reduce the debt.

5.
<u>LEASES AND RENTS</u>

    5.1  <u>Borrower to Comply with Leases</u>. Borrower will, at its own cost and expense:

      a)  Provide Lender copies of all lease(s) of the Premises;

      b)  Faithfully abide by, perform and discharge each and every obligation, covenant and agreement under any lease(s) to be performed by the landlord thereunder;

      c)  Enforce or secure the performance of each and every material obligation, covenant, condition and agreement of said lease(s) by the tenants thereunder to be performed;

      d)  Not borrow against, pledge or further assign any rents due under said lease(s);

      e)  Not permit the prepayment of any rents for more than the next accruing installment of rents, nor anticipate, discount, compromise, forgive or waive any rents;

      f)  Not consent to a subordination of any lease(s) to any party other than Lender and then only if specifically required by Lender; and

      g)  Not permit any tenant to assign or sublet its interest in its lease unless required to do so by the terms of its lease.

    5.2  <u>Lender's Right to Perform Under Leases</u>. Should Borrower fail to perform, comply with or discharge any obligations of Borrower under any lease or should Lender

Twelve Oaks Partners, LLC
Deed of Trust

v2

become aware of or be notified by any tenant under any lease of a failure on the part of Borrower to so perform, comply with or discharge its obligations under said lease, Lender may, but shall not be obligated to, and without further demand upon Borrower, and without waiving or releasing Borrower from any obligation in this Deed of Trust contained, remedy such failure, and Borrower agrees to repay upon demand all sums incurred by Lender in remedying any such failure together with interest at the then rate in effect on the Note. All such sums, together with interest as aforesaid shall become so much additional Indebtedness Secured Hereby, but no such advance shall be deemed to relieve Borrower from any default hereunder.

5.3    Assignment of Leases and Rents. To further secure the Indebtedness Secured Hereby Borrower does hereby sell, assign and transfer unto Lender all of the leases, rents, income and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal, or any agreement for the use or occupancy of the Premises, it being the intention of this Deed of Trust to establish an absolute transfer and assignment of all such leases and agreements and all of the rents, income and profits from the Premises unto Lender and Borrower does hereby appoint irrevocably Lender its true and lawful attorney in its name and stead, which appointment is coupled with an interest, to collect all of said rents, income and profits; provided, Lender grants Borrower the privilege, revocable, to collect and retain such rents, income, and profits unless and until an Event of Default exists under this Deed of Trust. Upon an Event of Default Lender, may, at its option, without notice, either in person or by agent, with or without taking possession of or entering the Premises, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, collect all of the rents and enforce the payment thereof, and all of the rights of Borrower under the lease(s) and all of the rights of Lender hereunder, and may enter upon, take possession of, manage and operate said Premises, or any part thereof; may cancel, enforce or modify the lease(s), and fix or modify rents, and do any acts which Lender deems proper to protect the security hereof with or without taking possession of said Premises, and may apply the same to the costs and expenses of operation, management and collection, including reasonable attorney's fees, to the payment of the fees and expenses of any agent, or receiver so acting, to the payment of taxes, assessments, insurance premiums and expenditures for the management and upkeep of the Premises, to the performance of the landlord's obligation under the lease(s) and to any Indebtedness Secured Hereby all in such order as Lender may determine. The entering upon and taking possession of said Premises, the collection of such rents, and the application thereof as aforesaid, shall not cure or waive any default or waive, modify or affect notice of default under this Deed of Trust or invalidate any act done pursuant to such notice nor in any way operate to prevent Lender from pursuing any remedy which it now or hereafter may have under the terms or conditions of this Deed of Trust or the Note or any other instrument securing the same.

5.4    Present Assignment and License. The assignment of the rents and leases contained herein is an absolute and present assignment of the rents and lease(s) which upon recording will be perfected, provided Lender grants to Borrower a revocable license to collect, but not prior to accrual, the rents, and to retain, use and enjoy the same. Lender at its sole election may revoke any such licenses granted to Borrower upon the occurrence of a Event of Default.

5.5    Civil Code Section 2938(k). Without limiting the generality of the foregoing, upon delivery of the notice in the form of Section 2938(k) of the California Civil Code to the lessees named in the Leases or any future lessees of the Premises, or upon compliance with

any of the procedures in Section 2938(c) of the California Civil Code, Lender shall be entitled to collect and receive all rents, issues and profits.

## 6.
## RIGHTS OF LENDER

6.1 Right to Cure Default. If Borrower shall fail to comply with any of the covenants or obligations of this Deed of Trust, Lender may, but shall not be obligated to, without further notice to Borrower, and without waiving or releasing Borrower from any obligation in this Deed of Trust contained, remedy such failure, and Borrower agrees to repay upon demand all sums incurred by Lender in remedying any such failure together with interest at the then rate in effect on the Note. All such sums, together with interest as aforesaid shall become so much additional Indebtedness Secured Hereby, but no such advance shall be deemed to relieve Borrower from any failure hereunder.

6.2 No Claim Against Lender. Nothing contained in this Deed of Trust shall constitute any consent or request by Lender, express or implied, for the performance of any labor or services or for the furnishing of any materials or other property in respect of the Premises or any part thereof, nor as giving Borrower or any party in interest with Borrower any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would create any personal liability against Lender in respect thereof or would permit the making of any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this Deed of Trust.

6.3 Inspection. Borrower will permit Lender's authorized representatives to enter the Premises at reasonable times for the purpose of inspecting the same; provided Lender shall have no duty to make such inspections and shall not incur any liability or obligation for making or not making any such inspections.

6.4 Waivers; Releases; Resort to Other Security, Etc. Without affecting the liability of any party liable for payment of any Indebtedness Secured Hereby or performance of any obligation contained herein, and without affecting the rights of Lender with respect to any security not expressly released in writing, Lender may, at any time, and without notice to or the consent of Borrower or any party in interest with the Premises or the Note:

　　a) release any person liable for payment of all or any part of the Indebtedness Secured Hereby or for performance of any obligation herein;

　　b) make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Indebtedness Secured Hereby or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof;

　　c) accept any additional security;

　　d) release or otherwise deal with any property, real or personal, including any or all of the Premises, including making partial releases of the Premises; or

Twelve Oaks Partners, LLC
Deed of Trust

v2

e) resort to any security agreements, pledges, contracts of guarantee, assignments of rents and leases or other securities, and exhaust any one or more of said securities and the security hereunder, either concurrently or independently and in such order as it may determine.

**6.5**   Waiver of Appraisement, Homestead, Marshaling. Borrower waives to the full extent lawfully allowed the benefit of any homestead, appraisement, evaluation, stay and extension laws now or hereinafter in force. Borrower waives any rights available with respect to marshaling of assets so as to require the separate sales of any portion of the Premises, or as to require Lender to exhaust its remedies against a specific portion of the Premises before proceeding against the other and does hereby expressly consent to and authorize the sale of the Premises or any part thereof as a single unit or parcel or as separate parcels.

**6.6**   Civil Codes Sections 2899 and 3433. Borrower specifically, unconditionally and irrevocably waives any and all rights to require marshalling of assets or to require realization on any portion of the Premises in a particular order provided by California Code Sections 2899 and 3433.

**6.7**   Civil Code 2822 Waiver. Borrower hereby waives any rights under California Civil Code Section 2822 or any successor sections to designate the portion of the obligations under the Loan Documents that are to be satisfied by any payment or other satisfaction by Borrower.   Any such payment or other satisfaction shall not affect in any manner the obligations of any Guarantor under any Guaranty.

**7.**
## EVENTS OF DEFAULT AND REMEDIES

**7.1**   Events of Default. The occurrence of any one of the following events shall constitute an "Event of Default" hereunder:

a)   Borrower shall fail to pay any amount on the Note when due or shall fail to pay when due any subsequent loan or advance made by Lender hereunder or the interest thereon; or

b)   Intentionally omitted; or

c)   Borrower, or any co-maker, endorser, guarantor or surety of the Note shall fail duly to perform or observe any non-payment covenant or agreement in the Note, this Deed of Trust, the Loan Agreement, or any other agreement, instrument or writing contemplated by or made or delivered pursuant to or in connection with the Note, this Deed of Trust, or the Loan Agreement and such breach or failure is not cured within thirty (30) days thereafter; provided, if the same is not susceptible of cure within said time limits and the same may be cured within a reasonable period of time thereafter, the time period shall be extended for such additional time, but not to exceed sixty (60) days; or

d)   Any statement, representation or warranty made by Borrower, Guarantor or any such co-maker, endorser, guarantor or surety to Lender at any time shall prove to have been incorrect or misleading in any material respect when made; or

Twelve Oaks Partners, LLC
Deed of Trust

v2

22

e)    Borrower, or any such co-maker, endorser, guarantor or surety shall dissolve, terminate, become insolvent, or shall generally not be paying its debts as the come due, or shall make a general assignment for the benefit of creditors or shall initiate or have initiated against it any act, process or proceeding under any insolvency, bankruptcy, receivership, dissolution, liquidation or similar law; or

f)    Borrower, or any such co-maker, endorser, guarantor or surety shall die, liquidate, merge, consolidate, transfer a substantial part of its property, or, if a partnership or limited liability company, suffer the death, dissolution or liquidation of any partner or member; or

g)    A trustee, receiver or liquidator of Borrower, or any co-maker, endorser guarantor or surety of the Note, or of any substantial part of its properties or assets shall be appointed with the consent or acquiescence of Borrower or any co-maker, endorser, guarantor or surety of the Note, or any such appointment, if not so consented to or acquiesced in, shall remain unvacated or unstayed for an aggregate of thirty (30) days (whether or not consecutive); or

h)    Execution shall have been levied against the Real Property or any lien creditor's suit to enforce a judgment against the Real Property shall have been brought and (in either case) shall continue unstayed and in effect for a period of more than thirty (30) consecutive calendar days; or

i)    There shall exist a default or condition that would, in the opinion of Lender, entitle any tenants of the Real Property to terminate their respective Leases, and said tenants shall not have excused or waived such default or condition; or

j)    The Premises is subject to actual or threatened waste, or any part thereof, be removed, demolished or materially altered so that the value of the Premises be diminished; or

k)    Any federal or state tax lien or claim of lien for labor or material be filed of record against Borrower, Guarantor or the Premises and not be removed by payment or bond within thirty (30) days from date of recording; or

l)    Any claim of priority to this Deed of Trust by title, lien or otherwise is asserted in any legal, administrative of equitable proceeding and such claim is not dismissed within thirty (30) days from the date of assertion; or

m)    Intentionally omitted; or

n)    The holder of any lien or security interest on all or any part of the Premises posts a notice of public sale of any portion of the Premises or institutes foreclosure or other proceedings for the enforcement of its remedies under any instrument creating such a lien or security interest, subject to Borrower's right to contest any such proceeding in accordance

Twelve Oaks Partners, LLC
Deed of Trust

23

.v2

with the provisions for contesting taxes and other impositions under Section 1.6 hereof; or

o)    Lender reasonably suspects the occurrence of one or more Events of Default and Borrower or Guarantor, upon the request of Lender, shall fail promptly to provide evidence reasonably satisfactory to Lender that such Event(s) of Default has not in fact occurred.; or

p)    An event of default occurs under the Loan Agreement.

7.2    Lender's Right to Accelerate. If an Event of Default shall occur Lender may declare the entire unpaid principal balance of the Note together with all other Indebtedness Secured Hereby to be immediately due and payable and thereupon all such unpaid principal balance of the Note together with all accrued interest thereon at the Note Rate and all other Indebtedness Secured Hereby shall be and become immediately due and payable.

7.3    Remedies of Lender and Right To Foreclose. Upon and after any such Event of Default:

a)    Trustee or Lender personally or by its agents or attorneys, may enter into and upon all or any part of the Premises, and each and every part thereof, and may exclude Borrower, its agents and servants wholly therefrom; and, having and holding the same, may use, operate, manage and control the Premises and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and, upon every such entry, Trustee or Lender, at the expense of the Premises, from time to time, either by purchase, repairs or construction, may maintain and restore the Premises, whereof it shall become possessed as aforesaid, may complete the construction of the improvements and, in the course of such completion, may make such changes in the contemplated improvements as it may deem desirable and may insure the same; and, likewise, from time to time, at the expense of the Premises, Trustee or Lender may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may seem advisable; and, in every such case, Trustee or Lender shall have the right to manage and operate the Premises and to carry on the business thereof and exercise all rights and powers of Borrower with respect thereto, either in the name of Borrower or otherwise as it shall deem best; and Trustee or Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Premises and every part thereof, all of which shall, for all purposes, constitute property of Borrower; and, after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Premises or any part thereof, as well as just and reasonable compensation for the services of Trustee or Lender and for all attorneys, counsel, agents, clerks, servants and other employees by its properly and reasonably engaged and employed, Lender shall apply the

moneys arising as aforesaid first to the interest on the Note when and as the same shall become payable, and second to the payment of the principal of the Note and to the payment of any other sums required to be paid by Borrower under this Deed of Trust, and the balance, if any, to Borrower.

b)     Upon and after ten (10) days written notice to Borrower of any Event of Default, Lender shall have all of the remedies of a secured party under the Uniform Commercial Code, California Civil Code Subdivision 2924 et seq. and any other applicable California law, including, without limitation, the right and power to sell or otherwise dispose of the Collateral or any part thereof, and for that purpose may take immediate and exclusive possession of the Collateral, or any part thereof, and with or without judicial process, enter into any Premises on which the Collateral or any part thereof may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Lender's option, Borrower shall assemble the Collateral and make it available to Lender at the place and at the time designated in the demand. Lender shall be entitled to hold, maintain, preserve and prepare the Collateral for sale. Lender, without removal, may render the Collateral unusable and dispose of the Collateral on the Premises. To the extent permitted by law, Borrower expressly waives any notice of sale or other disposition of the collateral and any other right or remedy of Lender existing after default hereunder, and to the extent any such notice is required and cannot be waived, Borrower agrees that as it relates to this paragraph (b) only if such notice is marked, postage prepaid, to Borrower at the above address at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of said notice. The remedies of Lender hereunder are cumulative and separate, and the exercise of any one or more of the remedies provided for herein or under the California Uniform Commercial Code shall not be construed as a waiver of any of the other rights of Lender including having any Collateral deemed part of the realty upon any foreclosure thereof.

c)     Trustee may, and upon the written request of Lender shall, and Lender may to the extent permitted by law, with or without entry, personally or by its agents or attorneys, insofar as applicable:

(1)     Sell the Premises and all estate, right, title and interest, claim and demand therein, and right of redemption thereof, at one or more sales, as an entity or in parcels (and in such order or sequence as Lender may direct) and at such time and place and after such notice thereof as may be required or permitted by law at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale;

(2)     Institute proceedings for the complete or partial foreclosure of this Deed of Trust;

Twelve Oaks Partners, LLC
Deed of Trust

25

v2

(3)   Apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Premises to operate the same and collect all the earnings, revenues, rents, issues, profits and income therefrom and apply the same to the costs of the receivership, operating expenses of the Premises and the payment of the Indebtedness Secured Hereby; and

(4)   Take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Deed of Trust, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Lender shall elect.

Trustee may adjourn from time to time any sale by it to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Upon the completion of any sale or sales made by Trustee under or by virtue of this section, Trustee shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, and interest in and to the Premises and rights sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any such sale or sales made under or by virtue of this section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, interest, claim and demand whatsoever, whether at law or in equity, of Borrower in and to the properties and rights so sold, and subject to the laws of the State of California, shall be a perpetual bar both at law and in equity against Borrower and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Borrower.

In the event of any sale made under or by virtue of this section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the entire principal of and accrued interest on the Note, if not previously due and payable, and all other sums required to be paid by Borrower pursuant to this Deed of Trust, immediately thereupon shall become due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding.

The purchase money, proceeds or avails of any sale made under or by virtue of this section, together with any other sums which then may be held by Trustee or Lender under this Deed of Trust, whether under the provisions of this section or otherwise, shall be applied as follows:

Twelve Oaks Partners, LLC
Deed of Trust

v2

26

FIRST:  To the payment of the reasonable costs and expenses of sale, including reasonable compensation to Trustee, its agents and counsel, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Trustee or Lender under this Deed of Trust, together with interest at the Note Rate, on all advances made by Lender and all taxes or assessments, except any taxes, assessments or other charges subject to which the Premises shall have been sold.

SECOND:  To the payment of the whole amount then due, owing or unpaid upon the Note for principal and accrued interest, with interest on the unpaid principal and accrued interest at the Note Rate from and after the happening of any Event of Default from the due date of any such payment of principal until the same is paid.

THIRD:  To the payment of any other sums required to be paid by Borrower pursuant to any provisions of this Deed of Trust, the Loan Agreement, the Note, and the other Loan Documents.

FOURTH:  The surplus, if any, to Borrower or whomsoever may be lawfully entitled to receive the same.

Upon any sale made under or by virtue of this section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Lender may bid for and acquire the Premises or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness Secured Hereby the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Lender is authorized to deduct under this Deed of Trust. Lender, upon so acquiring the Premises, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

d)      No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy herein or by law provided, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. If there exists additional security for the performance of the obligations secured hereby, the holder of the Note, at its sole option and without limiting or affecting any rights or remedies hereunder, may exercise any of the rights and remedies to which it may be entitled hereunder either concurrently with whatever other rights it may have been expressly given in the document executed in connection with such other security or in such order as it may determine.

e)      Borrower grants and confers upon Trustee and Lender all the rights and

Twelve Oaks Partners, LLC
Deed of Trust

27

v2

powers available under Sections 2920-2944 of the California Civil Code including with particularity Section 2924.

**7.4   Waiver of Appraisement, Homestead, Redemption.** Borrower hereby covenants and agrees that it will not at any time insist or plead, or in any manner whatever claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor claim, take or insist upon any benefit of advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or pursuant to decree, judgment or order of any court of competent jurisdiction; or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the Premises so sold, or any part thereof, or relating to the marshaling thereof, upon foreclosure sale or other enforcement hereof. Borrower hereby specifically waives all rights of redemption from sale pursuant to any order or decree of foreclosure of this Deed of Trust on its own behalf.

**7.5   Receiver.** If an Event of Default shall occur, Lender shall be entitled as a matter of right without notice and without giving bond and without regard to the solvency or insolvency of Borrower, or waste of the Premises or adequacy of the security of the Premises, and whether or not proceedings have been brought to enforce this Deed of Trust to have a receiver appointed and who shall in addition to all the rights and powers granted to it under the terms of its receivership shall have all the rights and powers granted Lender hereunder including the right to the possession of the Premises, to collect the rents, income and profits therefrom and otherwise deal with and manage the Premises and apply the same to the payment of taxes, assessments, insurance premiums and expenditures for the management, repair and upkeep of the Premises, to the performance of landlord's obligations under any leases and to the Indebtedness Secured Hereby.

**7.6   Rights Under Uniform Commercial Code.** In addition to the rights available to a Lender of real property Lender shall also have all the rights, remedies and recourse available to a secured party under the Uniform Commercial Code including the right to proceed under the provisions of the Uniform Commercial Code governing default as to any property which is subject to the security interest created by the Deed of Trust or to proceed as to such personal property in accordance with the procedures and remedies available pursuant to a foreclosure of real estate.

**7.7   Due on Sale or Mortgaging, Etc.** In the event of a Transfer, without the written consent of Lender being first obtained, whether voluntarily, involuntarily, or by operation of law, then at the sole option of Lender, Lender may declare the entire unpaid principal balance together with accrued interest, due and payable in full and call for payment of the same in full at once. Any such payment shall be subject to the requirements, if any, in the Note providing for the payment of a prepayment premium in the event of a non-permitted Transfer. A consent by Lender as to any one Transfer shall not be deemed to be a waiver of the right to require consent to a future Transfer. As used herein, the term "Transfer" shall mean any sale, grant, pledge, assignment, deed of trust, encumbrance, security interest, consensual lien, hypothecation, lease, transfer or divesture or otherwise of i) an interest in the Premises, or (ii) Borrower, or (iii) a Controlling Interest in any entity controlling, managing or in control of Borrower. As used here in the term "Controlling Interest" shall mean (i) in the case of a corporation, a majority of the voting stock of the corporation or a change in the majority of directors of the board of directors of the corporation; (ii) in the

Twelve Oaks Partners, LLC
Deed of Trust
28
v2

case of a partnership, partnership interests representing a majority of the outstanding partnership interests in the same, (iii) in the case of a limited liability company, membership interests representing a majority of the outstanding membership interests in the limited liability company, or (iv) in the case of any other entity, interests representing a majority of the outstanding ownership interests in such entity, to the extent applicable.

BORROWER ACKNOWLEDGES AND WARRANTS THAT IT HAS READ AND UNDERSTOOD THE PROVISIONS OF THIS SECTION AND INITIALS THIS SECTION AS PROOF OF THIS STATEMENT.

INITIAL HERE: _____

7.8   Rights Cumulative. Each right, power or remedy herein conferred upon Lender is cumulative and in addition to every other right, power or remedy, express or implied, now or hereafter arising, available to Lender, at law or in equity, or under any other agreement, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Lender and shall not be a waiver of the right to exercise at any time thereafter any other right, power or remedy. No delay or omission by Lender in the exercise of any right, power or remedy arising hereunder or arising otherwise shall impair any such right, power or remedy or the right of Lender to resort thereto at a later date or be construed to be a waiver of any default or Event of Default under this Deed of Trust or the Note.

7.9   Right to Discontinue Proceedings. In the event Lender shall have proceeded to invoke any right, remedy or recourse permitted under this Deed of Trust and shall thereafter elect to discontinue or abandon the same for any reason, Lender shall have the unqualified right to do so and in such event Borrower and Lender shall be restored to their former positions with respect to the Indebtedness Secured Hereby. This Deed of Trust, the interest of Lender in the Premises and all rights, remedies and recourse of Lender shall continue as if the same had not been invoked.

8.
HAZARDOUS SUBSTANCE

8.1   Definitions. As used herein, the following definitions shall apply:

a).   "Hazardous Substance" shall mean any hazardous or toxic material, substance or waste, pollutant or contaminant which is defined, prohibited, limited or regulated under any statute, law, ordinance, rule or regulation of any local, state, regional or Federal authority having jurisdiction over the Premises of Borrower, or its use, including but not limited to any material, substance or waste which is (a) defined, listed or otherwise classified as a hazardous substance, hazardous material, hazardous waste or other words of similar meaning under any Environmental Laws; (b) petroleum, petroleum hydrocarbons, and all petroleum products; (c) polychlorinated biphenols; (d) lead; (e) urea formaldehyde; (f) asbestos and asbestos containing materials; (g) flammables and explosives; (h) infectious materials; (i) atmospheric radon at levels over 4 picocuries per cubic liter, (j) radio active materials; or (k) defined, prohibited, limited or regulated as a

Twelve Oaks Partners, LLC
Deed of Trust

29

v2

hazardous substance or hazardous waste under any rules or regulations promulgated under any Environmental Laws. "Hazardous Substance includes any chemical, material or substance defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "extremely hazardous waste", "restricted hazardous wastes", or "toxic substances" or words of similar import under Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316, 25501, and 25316 of the California Health and Safety Code; and Article 9 or Article 11 of Title 22 of the Administrative Code, Division 4, Chapter 20. "Hazardous Substances" shall not include any of the above customarily used in the construction of building improvements and building systems or the operation of the same provided they are used and disposed of in accordance with Environmental Laws and to the extent required under required permits.

b)     "Environmental Laws" shall mean any international, federal, state or local statute, law, regulation, order, consent, decree, judgment, permit, license, code, covenant, deed restriction, common law, treaty, convention, ordinance or other requirement relating to public health, safety or the environment, including, without limitation, those relating to releases, discharges or emissions to air, water, land or groundwater, to the withdrawal or use of groundwater, to the use and handling of polychlorinated biphenyls or asbestos, to the disposal, treatment, storage or management of hazardous or solid waste, or Hazardous Substances or crude oil, or any fraction thereof, or to exposure to toxic or hazardous materials, or to the handling, transportation, discharge or release of gaseous or liquid Hazardous Substances and any regulation, order, notice or demand issued pursuant to such law, statute or ordinance in each case applicable to the Premises of Borrower or its affiliates, if any, including without limitation the following:   the Comprehensive Environmental Response, Compensation and Liability Act, the Superfund Amendments and Reauthorization Act, the Solid Waste Disposal Act, the Resource Conservation and Recovery Act, the Hazardous and Solid Waste Act, the Hazardous Substances Transportation Act, the Federal Water Pollution Control Act, the Clean Water Act, the Safe Drinking Water Act, the Clean Air Act, the Toxic Substances Control Act, the Occupational Safety and Health Act, the Emergency Planning and Community Right-to-Know Act, the Federal Insecticide, Fungicide and Rodentcide Act, the Rivers and Harbors Appropriation Act, the Endangered Species Act, the National Environmental Policy Act, the Oil Pollution Act, and any state or local law, and any state statute or local ordinance implementing the same, and any further amendments thereto and all rules and regulations promulgated thereunder. "Environmental Laws" includes, without limitation, Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25501 and 25316 of the California Health and Safety Code, Section 2782.6(d) of the California Civil Code and Title 22 of the California Code of Regulations or any regulations promulgated pursuant to said laws, all as amended from time to time.

8.2   <u>Covenants of Borrower.</u> Borrower hereby covenants to Lender that Borrower shall (a) comply and shall cause all occupants of the Premises to comply with all federal, state and local laws, rules, regulations and orders with respect to the discharge, generation, removal, transportation, storage and handling of Hazardous Substances, (b) remove or remediate pursuant to Environmental Laws any Hazardous Substances immediately upon discovery of same, in accordance with applicable laws, ordinances and orders of governmental authorities having jurisdiction thereof, (c) pay or cause to be paid all costs associated with such removal; (d) prevent the migration of Hazardous Substances from or through the Premises onto or under other properties; (e) keep the Premises free of any lien imposed pursuant to any state or federal law, rule, regulation or order in connection with the existence of Hazardous Substances on the Premises; (f) not install or permit to be incorporated into any improvements in the Premises or to exist in or on the Premises any asbestos, asbestos-containing materials, urea formaldehyde insulation or any other chemical or substance which has been determined to be a hazard to health and environment; (g) not cause or permit to exist, as a result of an intentional or unintentional act or omission on the part of Borrower or any occupant of the Premises, a releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of any Hazardous Substances onto the Premises or into waters or other lands; and (h) give all notifications and prepare all reports required by Environmental Laws or any other law with respect to Hazardous Substances existing on, released from or emitted from the Premises.  The Real Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 <u>et seq</u> or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Premises that is reasonably likely to cause the Premises or any part thereof to be designated as Border Zone Property.

8.3   <u>Representations of Borrower.</u> Borrower represents that, to the best of their knowledge following due inquiry as a duly diligent property owner, and except as disclosed by the Environmental Site Assessment documents delivered to and accepted by Lender, (i) the Premises has been and is free from contamination by Hazardous Substances except for (A) immaterial quantities of automotive motor oil leaked inadvertently from vehicles in the ordinary course of the operation of the Premises and cleaned up in accordance with reasonable property management procedures and any applicable law, and/or (B) immaterial quantities of substances customarily and prudently used in the cleaning and maintenance of the Premises in accordance with any applicable law), (ii) no release of any such Hazardous Substance has occurred on or about the Premises, (iii) that the Premises currently complies, and will comply based on its anticipated use, with all current Environmental Laws, (iv) that, in connection with the ownership, operation, and use of the Premises, all necessary notices have been filed and all required permits, licenses and other authorizations have been obtained, including those relating to the generation, treatment, storage, disposal or use of Hazardous Substances, (v) that there is no present, or to the best of Borrower's knowledge following inquiry as a duly diligent property owner, past or threatened investigation, inquiry or proceeding relating to the environmental condition of, or to events on or about, the Premises, and (vi) there are not to the best of Borrower's knowledge any underground storage tanks containing Hazardous Materials currently existing, or to the extent such underground storage tanks are existing they are registered under the required Environmental Laws and do not contain any leakages, and (vii) Borrower has not received nor does it have any knowledge of any summons, citation, directive, letter or other communication, written or oral, from any local, state or federal governmental agency concerning (A) the existence of Hazardous Substances on the Premises or in the immediate vicinity, (B) the transportation, releasing,

Twelve Oaks Partners, LLC
Deed of Trust

v2

31

spilling, leaking, pumping, pouring, emitting, emptying, or dumping of Hazardous Substances onto the Premises or into waters or other lands or (C) violation of Environmental Laws.

8.4    Environmental Indemnification.  Borrower indemnifies and hold harmless Lender, its officers, directors, employees, agents, contractors, subcontractors, licensees, invitees, successors and assigns ("Indemnified Parties") from and against any and all claims, losses, liabilities (including without limitation strict liability), suits, obligations, fines, damages (other than consequential), judgments, injuries, administrative orders, consent agreements and orders, penalties, actions, causes of action, charges, costs and expenses, including without limitation attorneys' fees and consultants' fees (i) arising out of the inclusion in the Premises of Hazardous Substances or the presence on, the release from, the generation, manufacture, refining, treatment, storage, handling or disposal on, in or from the Premises of any Hazardous Substances, or any underground or above ground storage tanks containing Hazardous Substances and the cost of removal and remediation of the foregoing, or (ii) arising out of the transportation, discharge or removal from the Premises of any Hazardous Substance, or (iii) arising out of the inclusion in any product manufactured on the Premises of a Hazardous Substance; or (iv) arising out of the failure to perform the removal or abatement of or to institute a safe, effective and environmentally approved control plan for any Hazardous Substance or the replacement or removal of any soil, water, surface water, or ground water containing Hazardous Substance in accordance with Environmental Laws; or (v) arising out of the existence of any environmental lien against the Premises pursuant to any Environmental Laws; or (vi) arising out of any violation or claim of violation of Environmental Laws with respect to the Premises; or (vii) arising out of any administrative proceedings and negotiations of any description with any and all persons, political subdivisions, or governmental agencies in connection with an alleged or actual violation of an Environmental Law or presence of Hazardous Substances on the Premises; or (viii) arising out of any breach of any of the representations and covenants contained herein relating to Hazardous Substances and Environmental Laws (collectively the "Indemnified Loss"). Borrower shall bear, pay and discharge such Indemnified Loss (unless arising out of Lender's negligence or misconduct which is Material) as and when the same becomes due and payable. The indemnity in this Section 8.4 is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of this Deed of Trust, whether by payment of the Note and other Indebtedness Secured Hereby or any deed-in-lieu of foreclosure of the Premises. In addition, this Section is intended to be cumulative of any rights of Lender under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Borrower hereby waives any restrictions or limitations which such statutes may impose on Borrower's liability or Lender's rights or remedies under this Section. Borrower agrees that (i) this Section is intended as Lender's written request for information (and Borrower's response) concerning the environmental condition of the Premises security as required by California Code of Civil Procedure Section 726.5; and (ii) each provision in this Section (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Premises is intended by Lender and Borrower to be an "environmental provision" for purposes of California Code of Civil procedure Section 736.

8.5    Environmental Provision.  Without limiting any of the remedies provided in the Loan Documents, Borrower acknowledges and agrees that certain Environmental Indemnity Agreement of even date herewith between Borrower and Lender is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to the real property security (the "Environmental Provisions"), and that Borrower's

Twelve Oaks Partners, LLC
Deed of Trust

v2

32

failure to comply with the Environmental Provisions is a breach of contract such that Lender shall have the remedies provided under Section 736 of the California Code of Civil Procedure ("Section 736") for the recovery of damages and for the enforcement of the Environmental Provisions. Pursuant to Section 736, Lender's action for recovery of damages or enforcement of the Environmental Provisions shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d, or 726(b) of the California Code of Civil Procedure. Other than the remedy provided under Section 736, all remedies provided for by the Loan Documents are separate and distinct causes of action that are not abrogated, modified, limited or otherwise affected by the remedies provided under Section 736(a) of the California Code of Civil Procedure.

8.6     Waiver of Lien. In accordance with California Code of Civil Procedure Section 726.5, Lender may waive its lien against the Premises or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Borrower and all of Borrower's assets and property for the recovery of any deficiency, including, without limitation, seeking an attachment order under California Code of Civil Procedure Section 483.010. No such waiver shall be final or binding on Lender unless and until a final money judgment is obtained against Borrower. As between Lender and Borrower, for purposes of California Code of Civil Procedure Section 726.5, Borrower shall have the burden of proving that the release or threatened release was not knowingly or negligently caused or contributed to, or knowingly or willfully permitted or acquiesced to by Borrower or any related party (or any affiliate or agent of Borrower or any related party) and that Borrower made written disclosure thereof to Lender or that Lender otherwise obtained actual knowledge thereof prior to the making of the loan evidenced by the Note. For purposes of California Code of Civil Procedure Section 726.4, the acts, knowledge and notice of each "726.5 Party" shall be attributed to and be deemed to have been performed by the party or parties then obligated on and liable for payment of the Note. As used herein, "726.5 Party" shall mean Borrower, any successor owner to Borrower of all or any portion of the Premises, any related party of Borrower or any such successor and any affiliate or agent of Borrower, any such successor or any such related party. Without limiting the foregoing provisions, Borrower acknowledges that the Premises is included in the Premises covered by the Environmental Indemnity referred to in Section 8.1 above and is subject to all of the terms, conditions, and representations therein.

8.7     Run with Land. These covenants, representations, warranties and indemnities shall be deemed continuing covenants, representations, warranties and indemnities running with the Real Property for the benefit of Lender, and any successors and assigns of Lender, including any purchaser at a Deed of Trust foreclosure sale, any transferee of the title of Lender or any subsequent purchaser at a foreclosure sale, and any subsequent owner of the Premises claiming through or under the title of Lender and shall survive any foreclosure of this Deed of Trust and any acquisition of title of Lender. The amount of all such indemnified loss, damage, expense or cost, shall bear interest thereon at the rate of interest in effect on the Note and shall become so much additional Indebtedness Secured Hereby and shall become immediately due and payable in full on demand of Lender, its successors and assigns. The indemnification contained herein shall be a personal monetary obligation of Borrower notwithstanding any provisions of this Deed of Trust to the contrary that limit or exculp the personal liability of Borrower and/or require Lender to look solely to the security of the Premises.

Twelve Oaks Partners, LLC
Deed of Trust

33

v2

8.8 <u>Duration</u>. Notwithstanding anything in this Indenture to the contrary, the indemnifications herein shall not apply to the initial introduction of Hazardous Substances on or to the Premises by anyone other than Borrower from and after the date that Lender acquires title to the Premises through foreclosure free of any right of redemption or by a deed in lieu of foreclosure (the "Transfer Date"); provided, however, Borrower shall bear the burden of proof that the initial introduction of such Hazardous Substances (i) occurred subsequent to the Transfer Date, (ii) did not occur as a result of any acts or inaction of Borrower, and (iii) did not occur as a result of a continuing migration or release of any Hazardous Substances initially introduced, stored, or manufactured on the Premises prior to the Transfer Date.

9.
SPECIAL COVENANTS

9.1 <u>Single Purpose Entity</u>. Borrower covenants and agrees that it has not and shall not:

a.     engage in any business or activity other than the acquisition, development, ownership, operation and maintenance of the Premises and activities incidental thereto;

b.     acquire or own any material asset other than (i) the Premises and (ii) such incidental personal property as may be necessary for the operation of the Premises;

c.     merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Lender's consent;

d.     fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of Borrower's operating agreement or similar organizational documents, as the case may be, which relate to Borrower's status as a single purpose entity;

e.     own any subsidiary or make any investment in or acquire the obligations or securities of any other person or entity without the consent of Lender;

f.     commingle its assets with the assets of any of its partners or affiliates, or of any other person or entity;

g.     incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), except other than the Subordinate Loan (as defined in the Loan Agreement), unsecured trade and operational debt incurred with trade creditors in the ordinary course of its business of owning and operating the Premises in such amounts as are normal and reasonable under the circumstances, provided that such debt is not

Twelve Oaks Partners, LLC                                                                                                v2
Deed of Trust

34

evidenced by a note and is paid when due and provided in any event the outstanding principal balance of such debt shall not exceed at any one time one percent (1%) of the principal amount of the Loan;

h.   fail to pay its debts and liabilities from its own assets;

i.   fail to maintain its records, books of account and bank accounts separate and apart from those of the partners and affiliates of Borrower, the affiliates of a partner of Borrower, and any other person or entity;

j.   enter into any contract or agreement with any partner or affiliate of Borrower, any Guarantor, or any member, principal or affiliate thereof, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any partner or affiliate of Borrower or Guarantor, or any partner, principal or affiliate thereof;

k.   seek dissolution or winding up, in whole or in part;

l.   fail to correct any known misunderstandings regarding the separate identity of Borrower;

m.   hold itself out to be responsible (or pledge its assets as security) for the debts of another person;

n.   make any loans or advances to any third party, including any partner or affiliate of Borrower, or any partner, member, principal or affiliate thereof;

o.   fail to file its own tax returns or to use separate stationary, invoices and checks;

p.   agree to, enter into or consummate any transaction which would render Borrower unable to furnish certification or other evidence of compliance with the covenants referred to in Subsection (b) hereof;

q.   fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the entity with which such other party is transacting business, or (ii) to suggest that Borrower is responsible for the debts of any third party (including any partner or Affiliate (as defined in the Loan Agreement) of Borrower, or any partner, member, principal or affiliate thereof);

r.   fail to allocate fairly and reasonably among Borrower and any third party (including, without limitation, any Guarantor) any overhead for shared office space;

s.   fail to pay the salaries of its own employees (if any) and maintain a sufficient number of employees (if any) for its contemplated business

operations;

t.    fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

u.    file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors, without the unanimous written consent of Borrower's members (which, in the case of the limited partnership serving as a general partner of Borrower, will require the consent of the independent partner of such general partner).

10.

## MISCELLANEOUS

**10.1   Release of Deed of Trust.** Lender shall release the lien of this Deed of Trust upon individual parcels of the Real Estate upon receipt of partial payment of the principal of the Indebtedness Secured Hereby, as required by Section 6.01 of the Development Loan Agreement. When all Indebtedness Secured Hereby has been paid, this Deed of Trust and all assignments herein contained shall be void and this Deed of Trust shall be released by Lender at the cost and expense of Borrower, otherwise to remain in full force and effect.

**10.2   Choice of Law.** Notwithstanding the place of execution of this instrument, the parties to this instrument have contracted for California law to govern this instrument and it is controllingly agreed that this instrument is made pursuant to and shall be construed and governed by the laws of the State of California without regard to the principles of conflicts of law.

**10.3   Successors and Assigns.** This Deed of Trust and each and every covenant, agreement and other provision hereof shall be binding upon Borrower and its successors and assigns including, without limitation, each and every from time to time record owner of the Premises or any other person having an interest therein, shall run with the land and shall inure to the benefit of Lender and its successors and assigns. As used herein the words "successors and assigns" shall also be deemed to include the heirs, representatives, administrators and executors of any natural person who is or becomes a party to this Deed of Trust. In the event that the ownership of the Premises becomes vested in a person or persons other than Borrower, Lender shall not have any obligation to deal with such successor or successors in interest, unless such transfer is permitted by this Deed of Trust, and then only upon being notified in writing of such change of ownership. Upon such notification, Lender may thereafter deal with such successor in place of Borrower without any obligation to thereafter deal with Borrower and without waiving any liability of Borrower hereunder or under the Note. No change of ownership shall in any way operate to release or discharge the liability of Borrower hereunder, unless such release or discharge is expressly agreed to in writing by Lender.

**10.4   Unenforceability of Certain Clauses.** The unenforceability or invalidity of any provisions hereof shall not render any other provision or provisions herein contained unenforceable or invalid.

Twelve Oaks Partners, LLC                                                                v2
Deed of Trust

**10.5** Captions and Headings. The captions and headings of the various sections of this Deed of Trust are for convenience only and are not to be construed as confining or limiting in any way the scope or intent of the provisions hereof. Whenever the context requires or permits the singular shall include the plural, the plural shall include the singular and the masculine, feminine and neuter shall be freely interchangeable.

**10.6** Amendment/Modification. Any amendment to or modification of this Deed of Trust may be made in writing by and between Borrower and Lender without necessity of joinder therein by Trustee. No oral waiver, amendment, or modification may be implied and the same must be executed by the party against whom enforcement is sought.

**10.7** Substitution of Trustee. In case of the death or absence from the State of any Trustee herein or of any substitute Trustee appointed hereunder, or the refusal, failure or inability of any Trustee or any substitute Trustee for any reason to act hereunder, or in the event Lender shall deem it desirable to remove without cause any Trustee or any substitute Trustee and appoint another to execute this trust, then in either or any of said events Lender shall have the right without notice to or consent of Borrower or any other party, and is hereby authorized and empowered to appoint by instrument in writing a substitute Trustee in lieu of any Trustee herein named, who shall thereupon become vested with and succeed to all the title, power and duties hereby conferred upon Trustee named herein, the same as if said substitute Trustee had been named original Trustee by this instrument.

**10.8** Acceptance of Trust. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**10.9** Reconveyance Upon Surrender of Deed of Trust. Upon written request of Lender stating that all sums secured hereby have been paid, surrender of this Deed of Trust and all Note secured hereby to Trustee for cancellation and retention and upon payment by Lender of its fees (which fees shall have been paid by Borrower to Lender), Trustee shall reconvey to Borrower, without warranty, the Premises then held hereunder. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**10.10** Notices. Any notices and other communications permitted or required by the provisions of this Deed of Trust (except for telephonic notices expressly permitted) shall be in writing and shall be deemed to have been properly given or served by depositing the same with the United States Postal Service, or any official successor thereto, designated as Certified Mail, Return Receipt Requested, bearing adequate postage, or deposited with reputable private courier or overnight delivery service, and addressed as hereinafter provided. Each such notice shall be effective upon being deposited as aforesaid. The time period within which a response to any such notice must be given, however, shall commence to run from the date of receipt of the notice by the addressee thereof. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice sent. By giving to the other party hereto at least ten (10) days' notice thereof, either party hereto shall have the right from time to time to change its address and shall have the right to specify as its address any other address within the United States of America.

Each notice to Lender shall be addressed as follows:

> Marshall Bank, N.A.
> 225 South Sixth Street
> Suite 2900
> Minneapolis, Minnesota 55402
> Attn:  Vice President and General Counsel

Each notice to Borrower shall be addressed as follows:

> Twelve Oaks Partners, LLC
> 40935 County Center Drive, Suite A
> Temecula, California 92591
> Attn:  Randall W.  Blanchard

With a copy to:

> First American Title Company
> 1900 Midwest Plaza, 801 Nicollet Mall
> Minneapolis, MN 55402

Failure to provide such copy will not invalidate any notice to Borrower.

10.11  _Savings Clause_.  It is expressly stipulated and agreed to be the intent of Borrower, and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this section shall control every other covenant and agreement in the Note, this Deed of Trust and any other loan documents delivered in connection with this instrument ("Loan Documents"). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Note, this Deed of Trust or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the indebtedness evidenced by the Note ("Indebtedness"), or if Lender's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of the Note and all other Indebtedness (or, if the Note and all other Indebtedness have been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note and this Deed of Trust and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the indebtedness shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the indebtedness until payment in full so that the rate or amount of interest on account of the indebtedness does not exceed the maximum lawful rate from time to time in effect and applicable to the indebtedness for so long as the indebtedness is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that

Twelve Oaks Partners, LLC                                                                    v2
Deed of Trust

38

has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

10.12   ADJUSTABLE RATE NOTE. THIS INSTRUMENT SECURES A PROMISSORY NOTE WHICH CONTAINS PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT. REFERENCE IS MADE TO THE NOTE FOR THE TIME, TERMS AND CONDITIONS OF THE ADJUSTMENTS IN THE INTEREST RATE. SUCH TIMES, TERMS AND CONDITIONS ARE INCORPORATED HEREIN BY REFERENCE.

10.13   Consent to Jurisdiction. Borrower submit(s) and consent(s) to personal jurisdiction of the Courts of the State of California and Courts of the United States of America sitting in such State for the enforcement of this instrument and waive(s) any and all personal rights under the laws of any state or the United States of America to object to jurisdiction in the State of California. Litigation may be commenced in any state court of general jurisdiction for the State of California or the United States District Court located in that state, at the election of Lender. Nothing contained herein shall prevent Lender from bringing any action against any other party or exercising any rights against any security given to Lender or against Borrower personally, or against any property of Borrower, within any other state. Commencement of any such action or proceeding in any other state shall not constitute a waiver of consent to jurisdiction or of the submission made by Borrower to personal jurisdiction within the State of California.

10.14   Nature of Secured Obligations.  Notwithstanding any statement or inference to the contrary in this Deed of Trust or the other Loan Documents, (i) this Deed of Trust solely secures the obligations of Borrower; (ii) the obligations of Borrower and Guarantor under the Environmental Indemnity Agreement are unsecured; and (iii) the obligations of Guarantor under the Guaranty are unsecured, and any covenant or obligation of Guarantor set forth in the Loan Agreement shall be deemed unsecured.

10.15   Additional Provisions.  The Loan Documents, fully state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this Deed of Trust.  The Loan Documents also grant further rights to Lender and certain of them contain further agreements and affirmative and negative covenants by Borrower which apply to this Deed of Trust and to the Premises.  Section 6.20 of the Term Loan Agreement shall govern with respect to any "Claim" which arises under the terms of this Deed of Trust.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, Borrower has caused these presents to be executed as of the date first above written.

> **TWELVE OAKS PARTNERS, LLC,**
> a California limited liability company
>
> By: Ranco Realty Group, LLC
> Its: Managing Member
>
> By: _____
> Name: Randall W. Blanchard
> Its:   Manager

State of California          )
County of ~~Riverside~~ Orange ) ss
                             )

On June 12, 2007, before me, _Nicole Vollenweider_, Notary Public, personally appeared _Randall W. Blanchard_, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed on the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument, the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

Witness my hand and official seal.

_Nicole Vollenweider_



EXHIBIT "A"

<u>Legal Description</u>

(SEE NEXT PAGE)

EXHIBIT "A"

PARCEL A: (964-160-001)

THE SOUTHWEST QUARTER OF SECTION 14, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN
BERNARDINO MERIDIAN, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN
BY UNITED STATES GOVERNMENT SURVEY.

PARCEL B: (964-160-002)

THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN
BERNARDINO MERIDIAN, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN
BY UNITED STATES GOVERNMENT SURVEY.

PARCEL C: (964-190-008)

THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN
BERNARDINO BASE AND MERIDIAN, AS SHOWN BY UNITED STATES GOVERNMENT SURVEY;

EXCEPTING THEREFROM THE NORTHERLY 44 FEET AS CONVEYED TO THE COUNTY OF
RIVERSIDE BY DEED RECORDED JULY 31, 1970 AS INSTRUMENT NO. 74847 OF OFFICIAL
RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL D: (964-190-001 THROUGH 964-190-007)

PARCELS 1 THROUGH 7, INCLUSIVE, OF PARCEL MAP NO. 18809, AS SHOWN BY MAP ON FILE
IN BOOK 146 PAGES 68 THROUGH 70 OF MAPS, RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA.

PARCEL E: (964-160-004)

PARCEL 1 OF PARCEL MAP NO. 12506, AS SHOWN BY MAP ON FILE IN BOOK 65 PAGES 71
THROUGH 73 INCLUSIVE, OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM THAT PORTION CONVEYED TO WESTERN RIVERSIDE COUNTY
REGIONAL CONSERVATION AUTHORITY, A POLITICAL SUBDIVISION OF THE STATE OF
CALIFORNIA, BY GRANT DEED RECORDED DECEMBER 29, 2006 AS INSTRUMENT NO. 2006-
0956013 OF OFFICIAL RECORDS.

**EXHIBIT 3**

## GUARANTY OF RANDALL W. BLANCHARD

On this _7_ day of June, 2007, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of and to induce financial accommodations by **MARSHALL BANK, N.A.,** a national banking association (hereinafter called "Lender"), to or for the account of **TWELVE OAKS PARTNER, LLC,** a California limited liability company (hereinafter called "Borrower"), the undersigned guarantor (called "Guarantor"), absolutely, jointly, severally, unconditionally and irrevocably guarantees to Lender and to its successors, endorsees and assigns, the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the following (called the "Indebtedness"):

Any and all debts, obligations and liabilities of Borrower (and any and all successors of Borrower) to Lender pursuant to the Development Loan Agreement ("Loan Agreement") dated June _7_, 2007, and evidenced by Borrower's $59,590,000.00 promissory note dated June _7_, 2007, in favor of Lender, including but not limited to all principal, interest, and other charges, fees, expenses and amounts, and all amendments, extensions renewals and replacements of such note, but specifically excluding any and all obligations and liabilities arising under the Environmental Indemnity Agreement of even date herewith executed by Borrower and Guarantor, or otherwise relating to environmental matters contained in other loan documents by and between Borrower, Guarantor, Lender and/or others, which is secured by a Deed of Trust, Absolute Assignment of Rents and Security Agreement and Fixture Filing ("Mortgage") on the real property and improvements and other property described in the Mortgage as the "Mortgaged Property".

Guarantor also agrees to pay on demand all of Lender's fees, costs, expenses and attorneys' fees in connection with the Indebtedness, any security therefor, and this guaranty, plus interest on such amounts at the highest rate then applicable to any of the Indebtedness.

Guarantor agrees to indemnify Lender for, from and against all loss, damage and expense, including reasonable legal fees and expenses, and the costs of any settlement or judgment, incurred in connection with (a) any suit or proceeding in or to which Lender may be made a party for the purpose of protecting any lien securing the balance due under the Note, or (b) any breach by Borrower of the Loan Documents (as defined in the Loan Agreement), in, on or about the Mortgaged Property (as defined in the Mortgage). This indemnification shall be a personal obligation of the Guarantor and shall survive any foreclosure sale of any encumbered property.

Lender may at any time and from time to time, without consent of or notice to Guarantor, without incurring responsibility to Guarantor, without releasing, impairing or affecting the liability of Guarantor hereunder, upon or without any terms or conditions, and in whole or in part: (1) sell, pledge, surrender, compromise, settle, release, renew, subordinate, extend, alter, substitute, exchange, change, modify or otherwise dispose of or deal with in any manner and in any order any Indebtedness, any evidence thereof, or any security or other guaranty therefor; (2) accept any security for or other guarantors of any Indebtedness; (3) fail, neglect or omit to obtain, realize upon or protect any Indebtedness or any security therefor, to exercise any lien upon or right to any money, credit or property or to apply proceeds toward the liquidation of the Indebtedness, or to exercise any other right against Borrower, Guarantor, any other guarantor or any other person or entity; and (4) apply any payments and credits to the

Twelve Oaks Partners, LLC
Guaranty of Randall W. Blanchard

1

v2



Indebtedness in any manner and in any order. No act, omission or thing, except full payment and discharge of the Indebtedness, which but for this provision could act as a release or impairment of the liability of Guarantor hereunder, shall in any way release, impair or otherwise affect the liability of Guarantor hereunder, and Guarantor waives any and all defenses of Borrower pertaining to the Indebtedness, any evidence thereof, and any security therefor, except the defense of discharge by payment. The failure of any person or entity to execute this or any other guaranty shall not release, impair or affect the liability of Guarantor hereunder. This is a guaranty of payment and not of collection and the obligations of Guarantor shall be in addition to and shall not limit or in any way affect the obligations of Guarantor under any existing or future guaranties unless such other guaranties are revoked in writing. This guaranty is a primary obligation of Guarantor and Lender shall not be required to first resort for payment of the Indebtedness to Borrower or any other person or entity, their properties or estates, or any security or other rights or remedies whatsoever. Guarantor shall be and remain liable for any deficiency remaining after foreclosure of any deed of trust, mortgage, or security interest securing the Indebtedness, whether or not the liability of Borrower or any other person or entity for such deficiency is discharged pursuant to statute, judicial decision or otherwise.

The liability of Guarantor under this guaranty is in addition to and shall be cumulative with all other liabilities of Guarantor to Lender, as guarantor or otherwise, without any limitation as to amount, unless the writing evidencing or creating such other liability specifically provides to the contrary. If any payment applied by Lender to the Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including without limitation bankruptcy, insolvency or reorganization of Borrower or any other person or entity), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made. The liability of Guarantor shall be joint and several with any other guarantors or obligors guaranteeing the Indebtedness. *The liability of Guarantor is not secured by any of the Loan Documents.*

Guarantor waives: (1) notice of acceptance of this guaranty and of the creation and existence of the Indebtedness; (2) presentment, demand for payment, notice of dishonor, notice of nonpayment, and protest of any instrument evidencing the Indebtedness; and (3) all other demands and notices to Guarantor or any other person or entity and all other actions to establish the liability of Guarantor hereunder. Guarantor consents to the personal jurisdiction of the state and federal courts located in the State of California in connection with any controversy related to this guaranty or any transaction or matter relating to this guaranty, waives any argument that venue in such forums is not convenient, and agrees that any litigation initiated by Guarantor against Lender in connection with this guaranty or any transaction or matter relating to this guaranty shall be venued in either the California District Court, or the United States District Court, District of California, or the state court or federal court in which the Mortgaged Property is located.

Guarantor hereby agrees that Lender shall have no duty to advise Guarantor of information now or hereafter known to Lender regarding the financial or other condition of Borrower or any other person or entity primarily or secondarily liable on the Indebtedness or regarding any circumstance bearing on the risk of nonpayment of the Indebtedness. Guarantor acknowledges and agrees that Guarantor has conducted its own investigation of the business and affairs of Borrower and any other person or entity primarily or secondarily liable on the Indebtedness to its satisfaction, has not relied and will not rely on any information provided by

Twelve Oaks Partners, LLC
Guaranty of Randall W. Blanchard

2

v2



Lender in determining whether to enter into or continue this guaranty, and is and will continue to remain informed of Borrower's financial condition, the status and financial condition of other guarantors, if any, and all other circumstances which bear upon the risk of nonpayment of the Indebtedness.

All property of Guarantor now or hereafter in the possession, control or custody of or in transit to Lender for any purpose, including without limitation the balance of every account of Guarantor with and each claim of Guarantor against Lender, shall be subject to a lien and security interest in favor of Lender, as security for all liabilities of Guarantor to Lender, and shall be subject to be set off against any and all such liabilities, and Lender may at any time and from time to time at its option and without notice appropriate apply any such property toward the payment of any and all such liabilities.

Guarantor agrees to promptly provide to Lender from time to time the following, all in form and substance acceptable to Lender:

For individual - Within sixty (60) days following the end of each calendar year and as otherwise requested by Lender, the current signed personal financial statement of Guarantor.

Within thirty (30) days after the same are filed with the United States Internal Revenue Service, the annual federal income tax returns of Guarantor, and all schedules and K-1s as applicable, attachments and amendments to such returns.

Guarantor also agrees to promptly provide Lender from time to time with such other information respecting the condition (financial and otherwise), business and property of Guarantor as Lender may request, in form and substance acceptable to Lender.

Guarantor waives all claims, rights and remedies that Guarantor may now have or hereafter acquire against any person or entity at any time now or hereafter liable to payment of any of the Indebtedness and as to any collateral security, including but not limited to all claims, rights and remedies of contribution, indemnification, exoneration, reimbursement, recourse and subrogation, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise, whether or not the Indebtedness has been fully paid, and all payments and recoveries under this guaranty shall be considered equity investments by Guarantor in Borrower; provided, nothing contained in this guaranty shall deprive Guarantor of any claim, right or remedy, after the Indebtedness has been fully paid, against any person or entity other than Borrower. No delay or failure by Lender in exercising any right, and no partial or single exercise thereof shall constitute a waiver thereof. No waiver of any rights hereunder, and no modification or amendment of this guaranty shall be effective unless the same is in writing duly executed by Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved and shall not impair or affect the rights of Lender or the provisions of this guaranty in any other respect at any other time. This guaranty shall continue until written notice of revocation of this guaranty, executed by Guarantor, has been received by Lender; provided, no revocation of this guaranty shall affect in any manner any liability of Guarantor under this guaranty with respect to Indebtedness arising before Lender receives such written notice of revocation, and the sole effect of revocation of this guaranty shall be to exclude from this guaranty Indebtedness thereafter arising which is unconnected to Indebtedness theretofore arising or transactions theretofore entered into.

Twelve Oaks Partners, LLC
Guaranty of Randall W. Blanchard                              3                                         v2



Guarantor further agrees:

(a)     Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to: (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan (as defined in the Loan Agreement), (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or Guarantor, or (iv) exercise any other remedy against Borrower or any security.  No such action by Lender shall release or limit the liability of Guarantor, who shall remain liable under this guaranty after the action, even if the effect of the action is to deprive Guarantor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise.  Guarantor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(b)     Regardless of whether Guarantor may have made any payments to Lender, Guarantor hereby waives: (i) all rights to enforce any remedy that Lender may have against Borrower, and (ii) all rights to participate in any security now or later to be held by Lender for the Loan.  The waivers given in this subsection (b) shall be effective until the Loan has been paid and performed in full.

(c)     Guarantor further waives: (i) any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty (the so-called "Gradsky" defense) which, absent this waiver, Guarantor would have by virtue of an election by Lender to conduct a non-judicial foreclosure sale (also known as a "trustee's sale") of any real property security for the Loan, it being understood by Guarantor that any such non-judicial foreclosure sale will destroy, by operation of California Code of Civil Procedure Section 580d, all rights of any party to a deficiency judgment against Borrower and, as a consequence, will destroy all rights that Guarantor would otherwise have (including the right of subrogation, the right of reimbursement, and the right of contribution) to proceed against Borrower; (ii) any defense or benefits that may be derived from California Code of Civil Procedure Sections 580a, 580b, 580d or 726, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other jurisdiction; and (iii) any right to a fair value hearing under California Code of Civil Procedure Section 580a, or any other similar law, to determine the size of any deficiency owing (for which Guarantor would be liable hereunder) following a non-judicial foreclosure sale.

(d)     Without limiting the foregoing or anything else contained in this Guaranty, Guarantor waives all rights and defenses that Guarantor may have because the Loan is secured by real property.  This means, among other things:

(i)     That Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii)     If Lender forecloses on any real property collateral pledged by Borrower: (A) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B)



Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

This subsection (d) is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Loan is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(e)     Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

(f)     Guarantor waives Guarantor's rights of subrogation and reimbursement, including (i) any defenses Guarantor may have by reason of an election of remedies by Lender, and (ii) any rights or defenses Guarantor may have by reason of protection afforded to Borrower with respect to the Loan pursuant to the anti-deficiency or other laws of California limiting or discharging Borrower's obligations, including Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

(g)     Guarantor waives any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or comparable provisions of the laws of any other jurisdiction and further waives all other suretyship defenses Guarantor would otherwise have under the laws of California or any other jurisdiction.

(h)     No provision or waiver in this guaranty shall be construed as limiting the generality of any other provision or waiver contained in this guaranty. All of the waivers contained herein are irrevocable and unconditional and are intentionally and freely made by Guarantor.

Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and applications hereof and to this end the provisions of this guaranty are declared to be severable. This guaranty shall bind Guarantor and the heirs, representatives, successors and assigns of Guarantor, and of each of them respectively, and shall benefit Lender, its successors and assigns. This guaranty shall be governed by and construed in accordance with the internal laws of the State of California (excluding conflict of law rules).

All notices and other communications provided for hereunder shall be in writing (including telegraphic communication) and mailed or delivered, if to Borrower, at its address: 40935 County Center Drive, Suite A, Temecula, CA 92591; if to Guarantor, at its address: 40935 County Center Drive, Suite A, Temecula, CA 92591; and if to Lender, at its address: 225 South Sixth Street, Suite 2900, Minneapolis, MN 55402, Attention: Commercial Real Estate, or as to each party, at such other address as shall be designated by it in a written notice to the other party. All such notices and communications shall, when mailed or delivered, be effective when deposited in the mails or delivered to Borrower, Guarantor or Lender, addressed as aforesaid.

The following paragraphs (aa) through (ee) (collectively, "Reference and Arbitration Section") concern the resolution of any and all controversies or claims between Guarantor and

Twelve Oaks Partners, LLC
Guaranty of Randall W. Blanchard

5



v2

Lender, whether arising in contract or tort or by statute, that arise out of or relate to (i) this Guaranty (including any renewals, extensions or modifications), or (ii) any of the other Loan Documents (collectively, "Claims").

(aa)   As used herein, (i) the "Act" means the Federal Arbitration Act (Title 9, U.S. Code), and (ii) "JAMS" means JAMS or any successor thereto.

(bb)   If the Claim arises from or relates to an obligation to Lender secured by real property located in California, unless both Guarantor and Lender consent to submission of the Claim to binding arbitration as provided below, the Claim will be resolved as follows: Guarantor and Lender will designate a referee (or a panel of referees) selected under the auspices of JAMS in the same manner as arbitrators are selected in proceedings administered under the rules and procedures for the arbitration of financial services disputes of JAMS. The designated referee(s) will be appointed by a court as provided in California Code of Civil Procedure Section 638 and the following related Sections. The referee (or the presiding referee of the panel) will be an active attorney or a retired judge. The award that results from the decision of the referee(s) will be entered as a judgment in the court that appointed the referee, in accordance with the provisions of California Code of Civil Procedure Sections 644 and 645.

(cc)   (i)   If and only if both Guarantor and Lender so consent, any Claim shall be resolved by binding arbitration in accordance with the Act. The Act will apply even though this Guaranty provides that it is governed by the law of a specified state. Arbitration proceedings will be determined in accordance with the Act, the rules and procedures for the arbitration of financial services disputes of JAMS, and the terms of this Reference and Arbitration Section. In the event of any inconsistency, the terms of this Reference and Arbitration Section shall control.

(ii)   The arbitration shall be administered by JAMS and conducted in any U.S. state where real or tangible personal property collateral for the Loan is located or, if there is no such collateral, in California. All Claims shall be determined by one arbitrator; however, if any Claim exceeds FIVE MILLION AND NO/100TH DOLLARS ($5,000,000.00), or, if more than one Claim is made at the same time and cumulatively the Claims exceed FIVE MLLION AND NO/100TH DOLLARS ($5,000,000.00), upon the request of any party, the Claims shall be decided by three (3) arbitrators. All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement, and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(iii)   The arbitrator(s) will have the authority to decide whether any Claim is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitrable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Guaranty.

Twelve Oaks Partners, LLC                                                                                      v2
Guaranty of Randall W. Blanchard

6



(dd) This Reference and Arbitration Section does not limit the right of Guarantor or Lender to (i) exercise self-help remedies, such as but not limited to, setoff, when allowed by law, (ii) initiate judicial or nonjudicial foreclosure against any real or personal property collateral, (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(ee) The filing of a court action is not intended to constitute a waiver of the right of Guarantor or Lender, including the suing party, thereafter to require submission of the Claim to a referee.

(ff) By agreeing to this Reference and Arbitration Section, the parties irrevocably and voluntarily waive any right they may have to a trial by jury in respect of any Claim as provided in the paragraph immediately following below ("Waiver of Jury Trial Section"). Furthermore, without intending in any way to limit the agreement for reference and arbitration set forth in this Reference and Arbitration Section, to the extent any Claim is not submitted for reference or arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury in respect of such Claim as provided in Waiver of Jury Trial Section.

GUARANTOR AND LENDER WAIVE TRIAL BY JURY IN RESPECT OF ANY "CLAIM" AS DEFINED IN THIS REFERENCE AND ARBITRATION SECTION. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GUARANTOR AND LENDER, AND GUARANTOR AND LENDER HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE LOAN DOCUMENTS. GUARANTOR AND LENDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS WAIVER OF JURY TRIAL PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. GUARANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL..

If any attorney is engaged by Lender to enforce or defend any provision of this guaranty, or any of the other Loan Documents (as defined in the Loan Agreement), or as a consequence of any Event of Default under the Loan Documents (as defined in the Loan Agreement), with or without the filing of any legal action or proceeding, Guarantor shall pay to Lender, immediately upon demand, all reasonable attorneys' fees and costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified therein.

Twelve Oaks Partners, LLC
Guaranty of Randall W. Blanchard

7



v2

GUARANTOR REPRESENTS AND WARRANTS TO LENDER AND AGREES THAT GUARANTOR HAS READ THIS ENTIRE GUARANTY AND UNDERSTANDS ALL OF THE PROVISIONS OF THIS GUARANTY.

RANDALL W. BLANCHARD

**EXHIBIT 4**

## DEVELOPMENT LOAN AGREEMENT

THIS DEVELOPMENT LOAN AGREEMENT ("Agreement") is made and entered into this 7th day of June, 2007, by and among MARSHALL BANK, N.A., a national banking association ("Lender"), and TWELVE OAKS PARTNERS, LLC, a California limited liability company ("Borrower") and RANDALL W. BLANCHARD ("Guarantor").

### WITNESSETH:

WHEREAS, Borrower has requested that Lender extend to it a development loan as more fully described in this Agreement (the "Loan"); and

WHEREAS, Lender has agreed to extend the Loan to Borrower upon the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.01 Defined Terms. As used in this Agreement the defined terms in this Article I, and any other terms defined in this Agreement, i.e., those terms beginning with a capital letter, will have the meanings ascribed to each such term (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

(a)     "Advance" - An advance of the Commitment by Lender to Borrower pursuant to Article II hereof.

(b)     "Affiliate" - When used with reference to any Person, (a) each Person that, directly or indirectly, controls, is controlled by or is under common control with, the Person referred to, (b) each Person that beneficially owns or holds, directly or indirectly, 5% or more of any class of voting equity interests of the Person referred to, (c) each Person, 5% or more of the voting equity interests of which is beneficially owned or held, directly or indirectly, by the Person referred to, and (d) each of such Person's officers, directors, joint venturers and partners. For these purposes, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the Person in question, whether by contract, ownership of voting securities, membership interests or otherwise.

(c)     "Agreement" - This Development Loan Agreement, including any amendment hereof or supplement hereto.

(d)     "Business Day" - shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in California are authorized or required by law to close. All references in this Agreement to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

(e)     "CFD" - Community Facilities District.

(f)     "CFD Bonds" - Municipal revenue bonds sold to recover some or all of the Hard Costs and Soft Costs of the Project.

(g)     "Commitment" - The commitment of Lender to make advances to Borrower to refinance current outstanding debt, fund site work and development costs, fund an interest reserve and pay certain loan fees and closing costs in connection with the Project in an aggregate principal amount of up to and including FIFTY-NINE MILLION FIVE HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($59,590,000.00).

(h)     "Commitment Termination Date" - June 1, 2009, or the date of the termination of Lender's Commitment pursuant to Section 5.02 hereof, whichever date occurs earlier.

(i)     "Contractor(s)" - Any person who shall be engaged to work on or to furnish materials, labor and supplies for the Project.

(j)     "Development Contracts" - Those certain agreements between Borrower and various Contractors for the development of the Project.

(k)     "Disbursing Agent" - First American Title Insurance Company.

(l)     "Disbursing Agreement" - The Disbursing Agreement of even date herewith, executed by and between Borrower, Lender and the Disbursing Agent pertaining to the disbursement of the Advances to or on behalf of Borrower.

(l)     "Draw Request" - The Draw Request form that is submitted to Lender when Advances are requested in the form attached hereto as Exhibit A and incorporated herein by reference.

(m)     "Drawings and Specifications" - The drawings and specifications prepared by the Architect for the Project.

(n)     "Environmental Indemnity Agreement" - The Environmental Indemnity Agreement of even date herewith from Borrower and Guarantor in favor of Lender.

(o)     "Environmental Laws" - Any international, federal, state or local statute, law, regulation, order, consent, decree, judgment, permit, license, code, covenant, deed restriction, common law, treaty, convention, ordinance or other requirement relating to public health, safety or the environment, including, without limitation,

those relating to releases, discharges or emissions to air, water, land or groundwater, to the withdrawal or use of groundwater, to the use and handling of polychlorinated biphenyls or asbestos, to the disposal, treatment, storage or management of hazardous or solid waste or Hazardous Substances or crude oil, or any fraction thereof, or to exposure to toxic or hazardous materials, to the handling, transportation, discharge or release of gaseous or liquid Hazardous Substances and any regulation, order, notice or demand issued pursuant to such law, statute or ordinance, in each case applicable to the Mortgaged Property of Borrower, including without limitation the following:  (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Re-authorization Act of 1986; (ii) the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and the Hazardous and Solid Waste Amendments of 1984; (iii) the Hazardous Materials Transportation Act, as amended; (iv) the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1976; (v) the Safe Drinking Water Act; (vi) the Clean Air Act, as amended; (vii) the Toxic Substances Control Act of 1976; (viii) the Occupational Safety and Health Act of 1977, as amended; (ix) the Emergency Planning and Community Right-to-Know Act of 1986; (x) the National Environmental Policy Act of 1975; (xi) the Oil Pollution Act of 1990; (xii) Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25501 and 25316 of the California Health and Safety Code; (xiii) Section 2782.6(d) of the California Civil Code; (xiv) Title 22 of the California Code of Regulations and any similar or implementing state law; and any similar or implementing state law; and any other state or federal statute and any further amendments to these laws providing for financial responsibility for cleanup or other actions with respect to the release or threatened release of Hazardous Substances or crude oil, or any fraction thereof and all rules and regulations promulgated thereunder.

(p)    "Equity" - The amount of cash, which Borrower is required to invest or have available to invest in the Project which shall be $9,885,000 on or before the Initial Advance and $6,250,000 within fourteen (14) months from the date of the Initial Advance.

(q)    "Event of Default" - One of the Events of Default specified in Section 5.01 hereof.

(r)    "Gross Sale Proceeds" - All gross revenue from the sale of any parcel within the Mortgaged Property.

(s)    "Guaranty" - That certain guaranty of even date herewith executed and delivered by Guarantor.

(t)    "Hard Costs" - The costs of constructing the Project that are set forth as "Hard Costs" on the Project Cost Statement.

(u)    "Hazardous Substance" - Any hazardous or toxic material, substance or waste, pollutant or contaminant that is regulated under any statute, law, ordinance, rule or regulation of any local, state, regional or federal authority  having jurisdiction

over the Mortgaged Property of Borrower, or its use, including, but not limited to any material, substance or waste, that is: (i) defined as a hazardous substance under any Environmental Laws; (ii) a petroleum hydrocarbon, including crude oil or any fraction thereof and all petroleum products; (iii) polychlorinated biphenyls; (iv) lead; (v) urea formaldehyde; (vi) asbestos or asbestos containing materials; (vii) flammable explosives; (viii) infectious materials; (ix) radioactive materials; (x) mold; or (xi) defined or regulated as a hazardous substance or hazardous waste under any rules or regulations promulgated under any Environmental Laws.

(v)     "Inspecting Engineer" - The inspecting engineer to be retained by the Lender.

(w)     "Loan Documents" - This Agreement, the Note, the Mortgage, the Guaranty, the Environmental Indemnity Agreement and all other security or collateral documents executed by Borrower and Guarantor in connection herewith or therewith.

(x)     "Mortgage" - The Deed of Trust, Absolute Assignment of Rents and Security Agreement and Fixture Filing of even date herewith, executed by Borrower to Lender creating a first priority mortgage on the Mortgaged Property and a security interest in all of the personal property located thereon as security for payment of the Note.

(y)     "Mortgaged Property" - The land and improvements (including the Project) situated in Riverside County, California, and other personal property located thereon, as more particularly described in the Mortgage.

(z)     "Net Sales Proceeds" - Gross Sales Proceeds net of commissions and closing costs payable to third parties.

(aa)    "Note" - The promissory note from Borrower to Lender of even date herewith in the original principal amount of construct the Project in an aggregate principal amount of up to and including FIFTY-NINE MILLION FIVE HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($59,590,000.00).

(bb)    "Person" - Means and includes natural persons, corporations, limited liability companies, limited liability partnerships, limited liability limited partnerships, limited partnerships, general partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and governments and agencies and political subdivisions of those governments.

(cc)    "Project" - The development of the required infrastructure on the Mortgaged Property, to enable the development of 216 custom residential single-family lots in an exclusively gated community, private club house and active winery and wine producing grape land.

(dd)    "Project Budget" - The total cost of completing the Project.

(ee) "Project Cost" - Approximately $79,475,000.00, being the estimated amount necessary to complete the development of the Project, including hard and soft costs.

(ff) "Project Cost Statement" - The certificate of Borrower in which Borrower certifies to Lender the total of all Hard Costs and Soft Costs necessary to complete the Project in accordance with the Drawings and Specifications, and certifies to Lender the amount and source of Borrower's Equity, all as verified by Inspecting Engineer.

(gg) "Project Documents" - Collectively the Development Contracts, the Drawings and Specifications, the Project Budget, and all other contracts of Borrower with respect to the Project.

(hh) "Soft Costs" - The cost of constructing the Project that are set forth as "Soft Costs" on the Project Cost Statement.

(ii) "Subordinate Lender" - Shall mean Integrated Financial Associates, Inc., a Nevada corporation.

(jj) "Subordinate Loan" - Shall mean a subordinate loan made by Subordinate Lender to Borrower in the original principal amount of $3,750,000.00.

(kk) "Subordinate Note" - The promissory note from Borrower to Subordinate Lender of even date herewith in the original principal amount of up to and including THREE MILLION SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($3,750,000.00)

(ll) "Subordination Agreement" - That certain Subordination Agreement between Lender and Subordinate Lender wherein Subordinate Lender fully subordinates the Subordinate Note to the Loan evidenced by the Note and restricts certain of its rights to payment and enforcement of the Subordinate Loan.

(mm) "Substantial Completion" - The date on which Borrower demonstrates compliance with the conditions of Section 3.03 of this Agreement.

(nn) "Title Company" - First American Title Insurance Company.


**ARTICLE II**
**COMMITMENT TO MAKE ADVANCES,**
**DISBURSEMENT PROCEDURES AND DEPOSIT OF FUNDS**

Section 2.01 The Advances. Lender agrees, on the terms and subject to the conditions hereinafter set forth, to make Advances to Borrower from time to time during the period from the date hereof to the Commitment Termination Date in an aggregate principal amount of up to and including the maximum amount of the Commitment, to pay for or to reimburse Borrower for the

payment of the costs actually incurred in connection with the Project, that shall include but not be limited to costs of permits, licenses, labor, supplies, materials, services, equipment and insurance premiums, but shall not include any profit to Borrower acting in the capacity as developer or contractor, and for interest becoming due under the terms of the Note. The obligation of Borrower to repay the Advances shall be evidenced by the Note, containing the terms relating to maturity, interest rate, and other matters as set forth therein. All Advances shall be disbursed by the Disbursing Agent pursuant to the terms and conditions hereof and the Disbursing Agreement. As used herein, the term "Disburse" or "Disbursement" shall mean the disbursement of Advances made or to be made by the Disbursing Agent as provided herein and in the Disbursing Agreement.

Section 2.02   Advance Requirements.   Subject to the requirements of Section 2.03 below, Advances shall be made as follows:

(a)   Initial Advance.   Initial Advance shall be made in the total amount of up to approximately $31,790,000.00 to be used for: (i) refinance the acquisition of the Mortgaged Property; (ii) reimbursement of development expenses, and (iii) closing costs.

(b)   Development Advances.   Development Advances shall be made in the total amount of up to approximately $21,500,000.00.   Development Advances shall be used for the Project and as otherwise set forth in the Project Budget.

Section 2.03   Disbursement Procedures for Advances.

(a)   Whenever Borrower desires to obtain an Advance hereunder, such requests to be made no more often than monthly, Borrower shall submit to Lender and the Disbursing Agent a Draw Request, duly executed on behalf of Borrower setting forth the information requested therein. Each Draw Request shall be submitted at least ten (10) Business Days before the date the Advance is desired. With respect to Hard Costs, each Draw Request shall be limited to amounts equal to (i) the total costs actually incurred and paid or owed by Borrower to the date of such Draw Request for work on the Project acceptably completed, as approved by Lender, plus (ii) the cost of materials and equipment not incorporated in the Project, but delivered to and suitably stored at the Project site, less (iii) 10 percent (10%) (or such lesser hold back as is authorized by Lender), which hold back shall be retained by Lender until Substantial Completion of the Project (the "Retainage"), and less prior Advances. Notwithstanding anything herein to the contrary, no Advance for material stored at the Project site will be made by Lender unless Borrower shall advise Lender of its intention to so store materials prior to their delivery and provides suitable security for such storage. With respect to all Soft Costs, each Draw Request shall be limited to the total of such costs actually incurred by Borrower to the date of such Draw Request, less prior Advances for such costs. Each Draw Request shall be accompanied by a certification by the Borrower that (i) the Project is being constructed in accordance with the Drawings and Specifications in a good and workmanlike manner and that the work has been completed and the materials are in place as indicated in the Draw Request, (ii) the

undisbursed amount of the Commitment is in an amount sufficient to pay the remaining unpaid costs and expenses anticipated to complete the Project, and (iii) such other and further certificates, opinions, inspections, reports and other information as may be requested by Lender from time to time at its sole discretion. All Advances will be made in accordance with the amounts assigned to the various items in the Project Cost Statement (as amended from time to time to reflect authorized change orders), and no Advance will be made for any amount in excess of the values assigned such items in the Project Cost Statement. Each Draw Request shall constitute an affirmation by Borrower that all representations and warranties set forth in Article IV are true and correct as of the date of such Draw Request.

(b) At the time of submission of each Draw Request, Borrower shall submit to Lender and the Disbursing Agent the following:

(i) A written lien waiver with respect to all Hard Costs from each Contractor for work done and materials supplied by it that were paid for pursuant to the preceding Draw Request.

(ii) Documentation reasonably acceptable to Lender (receipts, canceled checks and the like) evidencing payment of all Soft Costs that were paid in connection with the immediately preceding Draw Request, excluding amounts drawn for payment of interest on the Advances or fees due to Lender.

(iii) Such other supporting evidence as may be requested by Lender or the Disbursing Agent to substantiate all payments that are to be made out of the relevant Draw Request and/or to substantiate all payments then made with respect to the Project.

(c) If on the date an Advance is desired Borrower has performed all of its agreements and complied with all requirements therefor to be performed or complied with hereunder including satisfaction of all applicable conditions precedent contained in Article III hereof, Lender shall transmit to the Disbursing Agent the amount of the requested Advance, less amounts owing to Lender (which will be applied directly by Lender), and the Disbursing Agent will disburse such funds pursuant to and in accordance with the terms of the Disbursing Agreement. Each Advance shall bear interest at the rate provided in the Note from the date such Advance is transmitted by Lender to the Disbursing Agent.

Section 2.04  Deposit of Funds by Borrower.  If Lender shall at any time determine that the undisbursed amount of the Commitment is less than the amount required to pay all costs and expenses of any kind that may be anticipated in connection with the Project, and if Lender shall thereupon send written notice thereof to Borrower specifying the amount required to be deposited by Borrower with the Disbursing Agent to provide sufficient funds to complete the Project, Borrower shall, within ten (10) calendar days of receipt of any such notice, deposit with the Disbursing Agent the amount of funds specified in Lender's notice. Borrower shall also deposit

with the Disbursing Agent, without demand by Lender, funds equal to any increase in the Project Cost resulting from an authorized change order.  Borrower agrees that any funds deposited with the Disbursing Agent shall be disbursed by the Disbursing Agent before any further disbursements of the Commitment.

Section 2.05  <u>Disbursements Without Receipt of Draw Request</u>.  Notwithstanding anything herein to the contrary, Lender shall have the irrevocable right at any time and from time to time to cause an advance of the Commitment or a disbursement of funds that are on deposit with Lender or the Disbursing Agent to pay principal or interest on the Note as and when said payments become due and to pay any and all costs and expenses referred to in Section 6.03 hereof, and following the occurrence of an uncured Event of Default to pay any and all costs and expenses necessary to complete the Project, or to satisfy any obligation of Borrower pursuant to the terms of this Agreement or the other Loan Documents, all without receipt of a Draw Request from Borrower.

Section 2.06  <u>Interest Reserve</u>.  A sum in the amount of $6,300,000.00 shall be unfunded and reserved for the funding of interest owed on the Loan (the "Interest Reserve").  Funds shall be advanced for the payment of accrued interest on Borrower's request, except as provided in Section 2.05 above.  If at any time the amount of funds in the Interest Reserve is depleted, or Lender determines are not adequate to pay all interest which will accrue through the Maturity Date (as defined in the Note) Borrower shall provide such additional funds as Lender may require to cover all interest becoming due on the Loan prior to the Maturity Date.  It is the intent of the parties hereto, that all Advances made pursuant to a Draw Request shall include, but not be limited to, an Advance from the unfunded Interest Reserve to pay interest then due under the Loan.  It is the further intent of the parties hereto that in the event an interest payment is due under the terms of the Note but (i) no Draw Requests has been made; or (ii) a Draw Request has been submitted such that the interest payment cannot be timely made as part of the Draw Request, THEN Lender may draw from the Interest Reserve to pay such accrued interest then due. If at any time the Interest Reserve is exhausted or Lender determines, at its sole discretion, it is insufficient due to interest rate adjustments, Borrower will, within 10 calendar days of Lender's request, deposit with Lender an amount sufficient for the funding of interest payments over the remaining term of the Loan.

Section 2.07  <u>Intentionally Omitted</u>.

Section 2.08  <u>Infrastructure Holdback</u>.  A sum in the amount of $18,750,000.00 shall be unfunded and held for a maximum of 14 months for infrastructure improvements as detailed on the Project Budget until Borrower has provided evidence to Lender that the following conditions have been met:

    (a)    Borrower has contributed additional equity which has been spent on the Project Costs in the amount of $6,250,000.00, and if not, then has deposited into an account controlled by Lender the sum of $6,250,000.00 in which Lender shall have a security interest as additional collateral for the Loan.

    (b)    Borrower has entered into valid and binding purchase and sale contracts representing not less than 87 available and mapped lots within Phases 1 and 2 of

the Mortgaged Property with Gross Sale Proceeds of $34,224,930.00.

If the above-stated conditions have not been satisfied by Borrower within fourteen (14) months of the initial Advance, Lender shall have no further obligation to advance any funds or any portion of the $18,750,000 constituting of the Infrastructure Holdback.

## ARTICLE III
## CONDITIONS OF LENDING

Section 3.01  Conditions Precedent to Lending.  The obligation of Lender to make the initial Advance hereunder shall be subject to the condition precedent that Borrower shall be in compliance with the conditions contained in Section 3.02 and the further condition precedent that Lender shall have received the following:

(a)    The Note, Mortgage, Guaranties, UCC Financing Statements, Environmental Indemnity Agreement and other Loan Documents to which Borrower as required hereunder is a party duly executed and delivered to Lender, all of which shall be satisfactory to Lender and Lender's legal counsel in form and content.

(b)    A current appraisal prepared by a state licensed appraiser approved by Lender indicating an appraised value of the Mortgaged Property as follows: minimum initial "as-is" market value of land of at least $63,200,000.00 and the as-improved value of the Mortgaged Property will result in a loan to value ratio of not more than 65% based upon the Loan being fully funded.  The appraisal shall be addressed to Lender and state that it has been prepared on Lender's behalf.  The form of the appraisal and the appraisal methods shall otherwise be satisfactory to Lender and shall conform to all requirements of State and Federal law.  Upon completion of development of the Project, at the expense of Borrower, the appraiser shall reinspect and recertify the value of the Mortgaged Property "as built."

(c)    A "marked-up commitment" for a mortgagee's title insurance policy duly endorsed by the Title Company that:  (i) names Lender as primary insured in the full principal amount of the Commitment; (ii) insures the Mortgage to be a valid first lien on the Mortgaged Property; and (iii) is free from exceptions for (1) matters that would be disclosed by a survey or inspection, (2) mechanics', contractors' or materialmen's liens and lien claims, (3) rights and claims of parties in possession, (4) easements or claims of easements not shown by the public records, and (5) other exceptions not specifically approved by Lender and as set forth in Exhibit B to the Mortgage.  All real estate taxes are current and all levied and pending assessments as of the date of the Mortgage shall be paid in full.  The policy shall include a Form 3.0 zoning endorsement, an ALTA Form 9 comprehensive endorsement, a variable rate endorsement, a survey endorsement, and such other endorsements as Lender may reasonably require under the circumstances.  Any undefined easements shall be defined and any appurtenant easements required for the Mortgaged Property must be executed and delivered and must satisfy requirements of the Title Company and Lender in the sole and uncontrolled discretion of the Title Company, Lender and Lender's legal counsel.

(d)     An ALTA survey of the Mortgaged Property, satisfactory to Lender and the Title Company, prepared by a registered land surveyor, which will include the legal description and area of the Mortgaged Property, show and certify to the perimeter lot lines, dimensions and vectors, the location of all existing footings, foundations and improvements, utilities, easements, rights of way, building set back lines, curb lines and encroachments, and the intended location of the improvements comprising the Project according to the Drawings and Specifications to be submitted and approved by Lender as provided herein. Said survey shall be prepared for Lender's and the Title Company's benefit and shall be certified by the surveyor in form acceptable to Lender and Title Company. The survey shall be updated, as necessary to show the footings or foundations of the improvements comprising the Project when the footings or foundation is completed, and shall be updated again to show the location of the "as-built" Project prior to the final disbursement of Loan proceeds.

(e)     Copies of all applicable permits, zoning approvals and plats necessary for development of the Project. Lender shall also receive a certificate of the engineer (or the opinion of Borrower's legal counsel) to the effect that all permits, zoning approvals and plats required by any governmental authority for development of the Project have been obtained.

(f)     Evidence satisfactory to Lender that the Project complies with all building codes and zoning and subdivision ordinances applicable thereto, and that zoning is available for the as-of-right construction of the Project, and that the Project and its use thereof are and at all times shall be in compliance with all other state, federal, and local laws and regulations.

(g)     Copies of the contracts between Borrower and Contractors. All such contracts shall be in form satisfactory to Lender and Lender's legal counsel and shall, together with the Drawings and Specifications, be assigned to Lender. The Contractor, if required by Lender, shall consent to such assignments.

(h)     Current financial statements, certified as true and correct by the party giving the same. All such financial statements shall: (i) indicate all assets, liabilities, contingent liabilities and income, and (ii) include separate financial statements for each significant asset (e.g., if partnership interests are shown as an asset, the financial statements of the partnership shall also be provided). All financial and credit information must be satisfactory to Lender in form and substance.

(i)     Satisfactory soil test borings and soil reports that are acceptable to Lender.

(j)     Written evidence from the proper municipal authorities and public utility companies that all utilities, sewage and related services are or will be available to the Mortgaged Property upon completion of the Project.

(k)     All reciprocal easement agreements, maintenance agreements, and other

easements relating to the Mortgaged Property as Lender or Lender's legal counsel may require, if any, for parking, access, utility and other purposes, all of which shall be satisfactory to Lender and Lender's legal counsel in form and content.

(l)   Evidence satisfactory to Lender that no petroleum product or other Hazardous Substance is present on the Mortgaged Property, and that no asbestos-containing products, urea-formaldehyde foams or PCB's are being used in the development of the Project.   Such evidence shall include a Phase 1 Environmental Assessment Report ("Phase 1") prepared by a licensed engineer or other qualified environmental consultant acceptable to Lender. The Phase 1 shall be addressed to Lender and state that it was prepared for Lender.  If the Phase 1 indicates that petroleum products or other Hazardous Substances are present, the Phase 1 shall identify such materials and shall analyze (including cost and time factors) recommended methods of removal. Borrower warrants that no asbestos containing products, urea-formaldehyde foam insulation or PCB's will be used in the development or equipping of the Project.

(m)   The Project Cost Statement.

(n)   Evidence satisfactory to Lender that Borrower has expended or has deposited with the Disbursing Agent not less than $9,885,000.00 of the required Equity in payment of costs and expenses incurred in connection with the Project that would be otherwise properly payable from an Advance, together with satisfactory lien waivers for Hard Costs paid with such funds.

(o)   The Disbursing Agreement, duly executed by the Disbursing Agent, Borrower and Lender in form and substance acceptable to Lender in its sole discretion.

(p)   Evidence of tangible net worth of Guarantor in a total amount of not less than $45,000,000.00 (excluding receivables from Affiliates or related entities). Evidence of such tangible net worth shall be provided on an internally prepared financial statement prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

(q)   Evidence of liquidity (in the form of cash or cash equivalents, time deposits and marketable securities) of Guarantor in a total amount of not less than $25,000,000.00.   Evidence of such liquidity shall be prepared by a third party acceptable to Lender (via bank statements or statements provided by a broker-dealer).

(r)   Payment to Lender of a commitment fee of $1,191,800.00.

(s)   Evidence that the appeals period has expired for the tentative map for the Project.

(t)   In the event that Borrower obtains the Subordinate Loan from the Subordinate Lender, (i) The Subordinate Loan shall be for an amount not to exceed the

Subordinate Note and shall be fully advanced; (ii) shall be secured by a lien of the Mortgaged Property junior to the Mortgage (but may be also secured by the membership interests in Borrower); (iii) shall be subject to a subordination, standstill and inter-creditor agreement in form and content, executed by Subordinate Lender approved by Lender; (iv) the Maturity Date of the Subordinate Note shall precede the Maturity Date of the Loan, no payment of interest or principal may be made on the Subordinate Note prior to payment in full of the Loan, and the interest rate not exceeding an annual rate of 22% (all which will accrue and remain unpaid until the Loan is paid in full), and all other terms and provisions of the Loan Documents for the Subordinate Loan shall be approved by Lender.

Section 3.02  Further Conditions Precedent to All Advances.  The obligation of Lender to make an Advance hereunder including each subsequent Advance shall be subject to the condition precedent that Borrower shall be in compliance with all conditions set forth in Sections 3.01 and further conditions precedent that on the date of each Advance:

(a)  No Event of Default hereunder, or event that would constitute such an Event of Default but for the requirement that notice be given or that a period of grace or time elapse, shall have occurred and be continuing and all representations and warranties made by Borrower in Article IV shall continue to be true and correct as of the date of such Advance.

(b)  No determination shall have been made by Lender that the undisbursed amount of the Commitment is less than the amount required to pay all costs and expenses of any kind that may be anticipated in connection with the Project; or if such a determination has been made and notice thereof sent to Borrower, Borrower has deposited the necessary funds with the Disbursing Agent or Lender in accordance with Section 2.04 hereof.

(c)  The disbursement requirements of Section 2.03 hereof and of the Disbursing Agent set forth in the Disbursing Agreement have been satisfied.

(d)  Borrower shall have provided to Lender such evidence of compliance with all of the provisions of this Agreement as Lender may reasonably request.

(e)  No license or permit necessary for the development of the Project shall have been revoked or the issuance thereof subjected to challenge before any court or other governmental authority having or asserting jurisdiction thereof.

Section 3.03  Conditions Precedent to the Final Advance.  The obligation of Lender to make the final Advance and to release the Retainage shall be subject to the condition precedent that Borrower shall be in compliance with all conditions set forth in Sections 3.01 and 3.02 and, further, that the following conditions shall have been satisfied:

(a)  The Project has been substantially completed in accordance with the Drawings and Specifications as determined by the Inspecting Engineer.

(b)     Lender has received each of the following documents and approvals, each of which shall be reasonably satisfactory to Lender and Lender's legal counsel:

(i)     An approval for disbursement from the Inspecting Engineer after its final inspection of the Project.

(ii)    A title endorsement from the Title Company that reflects the absence of any liens or other matters affecting title that are objectionable to the Lender.

(iii)   Final lien waivers executed by the Contractors.

3.04   <u>Insurance.</u>   Borrower shall obtain and shall continuously maintain thereafter the following policies of insurance:

<u>During Development and Prior to Completion</u>

<u>Contractor's Liability</u> - Contractor's Comprehensive General Liability Insurance [including operations, product liability, contingent liability operations, operations of subcontractors, completed operations, contractual liability insurance and comprehensive automobile liability insurance (including hired and non-owned liability)] and with combined single limit and general aggregate coverage for personal and bodily injury and property damage of at least $1,000,000.00 for each occurrence, $2,000,000.00 general aggregate and with $2,000,000.00 excess liability coverage.

<u>Worker's Compensation</u> - Statutory worker's compensation coverage in the required amounts.

<u>Seismic</u>  -  If the Project is located within seismic zones 3 or 4 (as defined by the latest edition of the Uniform Building Code, Seismic Zone Map) and if the Probable Maximum Loss (PML) estimate exceeds 20% as a percentage of the current replacement cost of the Project and Lender determines in its sole discretion to make the Loan, then Lender may require earthquake insurance as a condition to funding the Loan in the lesser of i) the full replacement cost of the Project or ii) the maximum amount obtainable, provided that any such coverage will only be required if such requirement is consistent with what institutional lenders are then requiring for comparable properties in the same geographic region.

<u>Flood</u> -  Flood insurance if any part of the Real Property now (or subsequently determined to be) is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and amendment or successor act thereto) in an amount at least equal to the lesser

of the full replacement cost of all buildings and equipment on the Real Property,
the outstanding principal amount of the Note or the maximum limited of coverage
available with respect to the buildings and equipment under said Act;

### After Completion

<u>Rents/Income</u> – Rents Loss or Business Interruption insurance covering risk of loss
due to the occurrence of any hazards insured against under the required fire and
extended coverage insurance in an amount equal to one (1) year's Loss of income
as such income may change from time to time due to changes in income from the
Premises.

<u>CGL</u> - Commercial general public liability insurance (including product liability,
completed operations, contractual liability, host liquor liability, broad form
property damage, and personal injuries, including death resulting therefrom) and
with combined single limit and general aggregate coverage for personal and bodily
injury and property damage of at least $1,000,000.00 for each occurrence,
$2,000,000.00 general aggregate and with $2,000,000.00 excess liability coverage.

Maximum deductible on all coverages and policies shall be no greater than $10,000.00. The
insurance carrier must be rated A, Class XII, or better, by Best's Rating Service. Such insurance
policies shall be written on forms and with insurance companies satisfactory to Lender, shall be in
amounts sufficient to prevent Borrower from becoming a co-insurer of any loss thereunder, shall
insure Lender as a first mortgagee on the casualty and business interruption/loss of rents
coverage under a standard mortgagee clause and shall name Lender as an "additional insured" on
all required liability coverages and policies. Insurance certificates evidencing such insurance and
evidence of payment of premiums thereon and written agreements by the insurer or insurers
therein to give Lender thirty (30) days' prior written notice of any intention to cancel. If no such
copy is available, Lender will accept a binder for a period not to exceed ninety (90) days.
Borrower shall, within thirty (30) days prior to the expiration of any such policy, deliver insurance
certificates evidencing the renewal of such insurance together with evidence of the payment of
current premiums therefor. Any vacancy, change of title, tenant occupancy or use, physical
damage, additional improvements or other factors affecting any insurance contract must be
promptly reported to Lender. All binders, certificates of insurance, and original or certified copies
of policies must name Borrower as a named insured, or as an additional insured, must include the
complete and accurate property address and must bear the original signature of the issuing
insurance agent. In the event of a foreclosure or trustee's sale under the Mortgage or any
acquisition of the Mortgaged Property by Lender all such policies and any proceeds payable
therefrom, whether payable before or after a foreclosure sale, or during the period of
redemption, if any, shall become the absolute property of Lender to be utilized at its discretion.
In the event of foreclosure or the failure to obtain and keep any required insurance Borrower
empowers Lender to effect the above insurance upon the Mortgaged Property at Borrower's
expense and for the benefit of Lender in the amounts and types aforesaid for a period of time
covering the time of redemption from sale, and if necessary therefore, to cancel any or all
existing insurance policies. Borrower agrees to pay Lender such fees as may be permitted under

Twelve Oaks Partners, LLC
Loan Agreement                          14                                    v4

applicable law for the costs incurred by Lender in determining, from time to time, whether the Mortgaged Property are located within an area having special flood hazards. Such fees shall include the fees charged by any organization providing for such services.

Section 3.05 <u>No Waiver</u>. The making of any Advance prior to fulfillment of any condition thereof shall not be construed as a waiver of such condition, and Lender reserves the right to require fulfillment of any and all such conditions prior to making any subsequent Advance.

Section 3.05 <u>Allocation of Awards</u>. Borrower unconditionally and irrevocably waives all rights of a property owner under Section 1265.225(a) of the California Code of Civil Procedure, or any successor statute providing for the allocation of condemnation proceeds between a property owner and a lien holder.

Section 3.06 <u>Waiver of Impairment</u>. Borrower specifically, unconditionally and irrevocably waives any rights it may have under any California case and/or statutory law, heretofore or hereafter in effect, which provides that a lender on a debt secured by improved real property must demonstrate that its security has been impaired as a result of a casualty before requiring that any or all insurance proceeds be used to reduce the debt.

## ARTICLE IV
### WARRANTIES, REPRESENTATIONS AND COVENANTS
### <u>OF BORROWER</u>

Section 4.01 <u>Representations and Warranties</u>. Borrower and Guarantor represent and warrant as follows:

(a)    The Loan Documents to which Borrower is and/or Guarantor are party have been duly executed and delivered to Lender by Borrower and/or Guarantor, as applicable, and each Loan Document constitutes the legal, valid and binding obligations of Borrower and/or Guarantor enforceable in accordance with the terms thereof (subject, as to enforceability, to limitations resulting from bankruptcy, insolvency and other similar laws affecting creditors' rights generally).

(b)    The Project and the intended use thereof for the purpose and in the manner contemplated by this Agreement are permitted by and comply in all material respects with all presently applicable use or other restrictions and requirements in prior conveyances, zoning ordinances and all development, pollution control, water conservation, environmental and other laws, regulations, rules and ordinances of the United States and the State of California and the respective agencies thereof, and the political subdivision in which the Mortgaged Property is located.

(c)    There is no suit, action or proceeding pending or, to the knowledge of Borrower and/or Guarantor threatened against or affecting Borrower and/or such Guarantor before or by any court, arbitrator, administrative agency or other governmental authority that if adversely determined would materially and adversely affect Borrower and/or such Guarantor, or the businesses, properties, operations, assets

or condition (financial or otherwise) of Borrower and/or Guarantor or the validity of any of the transactions contemplated by the Loan Documents, or Borrower's and/or Guarantor's ability to perform the obligations hereunder or thereunder or as contemplated hereby or thereby.

(d)     Borrower and Guarantor have filed all federal and state tax returns and informational reports required to be filed, which returns properly reflect the taxes owed by them for the period covered thereby and Borrower and/or Guarantor have paid all taxes that are due pursuant to said returns and paid all present installments of any assessments, fees and other governmental charges upon it or upon its property.

(e)     No consent, approval or authorization of or permit or license from or registration with or notice to any federal or state regulatory authority or any third party is required in connection with the making or the performance of the Loan Documents, the Project, or with respect to any other aspect of the Project or the Mortgaged Property, or, if so required, such consent, approval, authorization, permit or license has been requested and obtained or such registration made or notice given or such other appropriate action taken on or prior to the date hereof (other than with respect to the occupancy of the Mortgaged Property that cannot be obtained until completion of the Project).

(f)     Borrower and Guarantor are not in default of a material provision under any material agreement, instrument, decree or order to which either is a party or to which any parties' property are bound or affected.

(g)     There has been no material adverse change in the financial condition of Borrower or Guarantor since the date of certification of Borrower's and Guarantor's financial statements previously delivered to Lender.

(h)     The execution, delivery and performance by the Borrower and Guarantor of the Loan Documents and the borrowings from time to time hereunder have been duly authorized by all necessary corporate or company action and do not and will not (i) require any consent or approval of Borrower; (ii) require any authorization, consent or approval by, or registration, declaration or filing with, or notice to, any governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, or any third party, except such authorization, consent, approval, registration, declaration, filing or notice as has been obtained, accomplished or given prior to the date hereof; (iii) violate any provision of any law, rule or regulation (including Regulation X of the Board of Governors of the Federal Reserve System) or of any order, writ, injunction or decree presently in effect having applicability to the Borrower or of the Borrower's governance documents; (iv) result in a breach of or constitute a default under any indenture or loan or credit agreement or any other material agreement, lease or instrument to which the Borrower or any Guarantor is a party or by which it or its properties may be bound or affected; or (v) result in, or require, the creation or imposition of any Lien (other than the Mortgage) upon or with respect to any of the properties now

me

owned or hereafter acquired by the Borrower or Guarantor.

Section 4.02   Covenants.   On and after the date hereof and until payment in full of the Note and payment and performance of all other obligations of Borrower hereunder, and so long as any portion of the Loan referenced herein remain in effect, Borrower agrees as follows:

(a)   The Mortgaged Property shall comply with all applicable restrictions, conditions, ordinances, regulations and laws of governmental departments and agencies having jurisdiction over the Mortgaged Property, and shall not violate any private restrictions or covenants or encroach upon or interfere with easements affecting the Mortgaged Property, and that Borrower will commence and carry on continuously, diligently and with reasonable dispatch, the development activities with respect to the Project in conformance to the Drawings and Specifications, free from all mechanic's, laborer's and material man's liens and in a good and workmanlike manner, and complete the same prior to the maturity date of the Note.

(b)   To keep, perform, enforce and maintain in full force and effect all of the terms, covenants, conditions and requirements of the Project Documents (other than immaterial terms approved by Lender in the reasonable exercise of its discretion); not to amend, modify, supplement, terminate, cancel or waive any of the terms, covenants, conditions or requirements of any of said documents without the prior written consent of Lender; and to execute and deliver such amendments, modifications, supplements and extensions of said documents as may be reasonably requested by Lender.

(c)   To use its best efforts to require each Contractor to comply with all rules, regulations, ordinances and laws bearing on its conduct in the development of the Project.

(d)   To furnish to Lender as soon as possible and in any event within seven (7) days after Borrower has obtained knowledge of the occurrence of an event that would constitute an Event of Default hereunder or a violation of any of the covenants or obligations of Borrower under this Agreement or that would cause any of the representations or warranties hereunder to be false or misleading in any respect, or an event that with the giving of notice or lapse of time or both would constitute an Event of Default, that is continuing on the date of such statement, in which case Borrower shall deliver a signed statement setting forth the details of such violation or event and the action that has been taken, is being taken, or that Borrower proposes to take, to correct the same.

(e)   To hold Lender harmless, and Lender shall have no liability or obligation of any kind to Borrower, creditors of Borrower or any third party, in connection with any defective, improper or inadequate workmanship performed in or about, or materials supplied to the Mortgaged Property, or any mechanic's, supplier's or material man's liens arising as a result of such defective, improper or inadequate workmanship or materials, and upon Lender's request, to replace or cause to be

Twelve Oaks Partners, LLC
Loan Agreement                                                17                                                    v4

replaced, any such defective, improper or inadequate workmanship or materials.

(f)     To pay and discharge all taxes, assessments and governmental charges or levies imposed upon Borrower or upon its income or profits, or upon its assets or properties, prior to the date on which penalties attach thereto, and all lawful claims that, if unpaid, might become a lien or charge upon the property or assets of Borrower; provided, however, that Borrower shall not be required to pay any such tax, assessment, charge, levy or claim, the payment of which is being contested in good faith and by proper proceedings and for which it shall have set aside adequate reserves.

(g)     To keep the Mortgaged Property and any improvements, buildings and fixtures thereon in good working order and condition.

(h)     As soon as available, and within one hundred twenty (120) days after the end of each calendar year, a copy of the annual financial statements of Borrower, that shall include the balance sheet of Borrower as at the end of such year and related statements of income and expenses, statement of changes in financial position, a statement of changes in capital accounts and a statement of allocation of distribution of profits and losses of Borrower, all in reasonable detail, prepared in accordance with GAAP (or tax accounting reconciled to GAAP) and reviewed by a reputable accounting firm. Such statements shall be accompanied by the annual federal income tax returns of Borrower, including all schedules, for the preceding taxable year as filed with the Internal Revenue Service unless an extension has been obtained for filing taxes and then within thirty (30) days after final filing.

(i)     As soon as available, and within sixty (60) days after the end of each calendar year, a current financial statement of Guarantor which statement shall include an itemization of all assets and liabilities of Guarantor scheduled by item and type, all investments and contingent liabilities and adequate to disclose the net worth of Guarantor at such point in time. Such financial statement shall be personally certified by Guarantor and shall be accompanied by the annual federal income tax returns of Guarantor, including all schedules and K-1s as applicable, for the preceding taxable year as filed with the Internal Revenue Service unless an extension has been obtained for filing taxes and then within thirty (30) days after final filing.

(j)     Guarantor shall maintain a tangible net worth of no less than $45,000,000.00 (excluding receivables from Affiliates or related entities). Evidence of such tangible net worth shall be provided annually based on internally prepared financial statements prepared in accordance with GAAP, and provided to Lender no less than sixty (60) days following the end of each fiscal year.

(k)     Guarantor shall maintain throughout the term of the Loan, unrestricted liquidity in a total amount for Guarantor of not less than $25,000,000.00 in cash, cash equivalents, time deposits and marketable securities. Evidence of such liquidity shall be prepared by a third party reasonably acceptable to Lender (via bank

statements or statements provided by a broker-dealer), and shall be provided to Lender quarterly no less than thirty (30) days following the end of each such quarter.

(l)   Following the completion of infrastructure improvements, Borrower shall provide monthly lot sales updates not later than the tenth (10th) day of each month.

(m)   Within ten (10) days after Lender's request therefor, Borrower shall deliver to Lender such other information as Lender may reasonably request from time to time.

(n)   Borrower shall maintain and preserve its existence as a California limited liability company, and all rights, privileges, licenses, patents, patent rights, copyrights, trademarks, trade names, franchises and other authority to the extent material and necessary for the conduct of its respective business in the ordinary course as conducted from time to time. Without at least 30 days prior written notice Borrower shall not (i) change its legal name, (ii) change its state of organization, or (iii) change the location of its chief executive office.

Section 4.03 Negative Covenants. Borrower agrees that without the prior written consent of Lender:

(a)   Borrower shall not grant any security interest in the Mortgaged Property or any part thereof, or create or permit to be created or allow to exist any mortgage, encumbrance or other lien upon the Mortgaged Property or any other property (of any kind or character) which is pledged as collateral to Lender pursuant to any of the Loan Documents, except for the deed of trust of the Subordinate Lender.

(b)   Borrower shall not agree or consent to any material changes in the Project Documents; provided however, changes to the Project Documents which do not affect the aesthetics or diminish the value of the Project and which are in an amount not exceeding $100,000 in the aggregate shall not require Lender consent or approval or be in violation of this section.

(c)   Borrower shall not incorporate in the Project any materials, fixtures or property that are subject to the claims of any other person, whether pursuant to conditional sales contract, security agreement, lease, mortgage or otherwise.

(d)   Borrower shall not assume, guaranty, or become an obligor or surety for the obligations of any third party.

(e)   Borrower shall not incur any indebtedness other than the Loan, the Subordinate Loan, and trade payables in the ordinary course of its business.

(f)   Borrower will not declare or pay any dividends (other than dividends payable solely in stock or membership interests of the Borrower) on any class of its stock or membership interests, or make any payment on account of the purchase,

redemption or other retirement of any shares of such stock or membership interests, or other securities or evidence of its indebtedness or make any distribution in respect thereof, either directly or indirectly.

(g)  Borrower will not make or permit to exist any loans or advances to, or make any investment or acquire any interest whatsoever in, any other Person or Affiliate, including any partnership or joint venture, nor purchase or hold beneficially any stock or other securities or evidence of indebtedness of any other Person or Affiliate.

(h)  Borrower shall not form the CFD, nor engage in the sale of CFD Bonds without first providing Lender all documents relating thereto, for Lender's review and approval.

(i)  Borrower will not make or permit to exist any loans or advances to, or make any investment or acquire any interest whatsoever in, any other Person or Affiliate, including any partnership or joint venture, nor purchase or hold beneficially any stock or other securities or evidence of indebtedness of any other Person or Affiliate.

Section 4.04 . Environmental Representation, Warranties and Covenants, and Indemnities. To induce Lender to make and fund the Loan, Borrower and Guarantor hereby represent, warrants, covenant and agree as follows:

(a)  That, except as heretofore disclosed to Lender in writing (i) the Mortgaged Property has never been used by Borrower or to their knowledge by any previous owners or occupants or current occupants to generate, manufacture, refine, transport, treat, store, handle or dispose of any Hazardous Substances and no such Hazardous Substances exist on the Mortgaged Property or in its soil or groundwater, (ii) the Project will not be constructed with asbestos, asbestos containing materials, urea formaldehyde insulation or any other chemical or substance that has been determined to be a hazard to health and/or the environment, (iii) there does not presently exist, nor to best of their knowledge have there been in the past, electrical transformers or other equipment that have dielectric fluid-containing polychlorinated biphenyls (PCBs) located in, on or under the Mortgaged Property, (iv) the Mortgaged Property has never contained any underground storage tanks, (v) neither Borrower nor Guarantor have received or has any knowledge of any summons, citation, directive, letter or other communication, written or oral, from any local, state or federal governmental agency concerning the existence of Hazardous Substances on the Mortgaged Property or in the immediate vicinity of the Mortgaged Property or the releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of Hazardous Substances onto the Mortgaged Property or into waters or other lands, and (vi) the Mortgaged Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property..

(b)   That Borrower shall (i) comply and shall cause all occupants of the Mortgaged Property to comply with all federal, state and local laws, rules, regulations and orders with respect to the discharge, generation, removal, transportation, storage and handling of Hazardous Substances, (ii) remove any Hazardous Substances immediately upon discovery of the same in accordance with applicable laws, ordinances and orders of governmental authorities having jurisdiction thereof, (iii) pay or cause to be paid all costs associated with such removal, (iv) prevent the migration of Hazardous Substances from or through the Mortgaged Property onto or under other properties, (v) keep the Mortgaged Property free of any lien imposed pursuant to any state or federal law, rule, regulation or order in connection with the existence of Hazardous Substances on the Mortgaged Property, (vi) not install or permit to be incorporated into any improvements in the Mortgaged Property or to exist in or on the Mortgaged Property any asbestos, asbestos containing materials, urea formaldehyde insulation or any other chemical or substance that has been determined to be a hazard to health and/or the environment, (vii) not cause or permit to exist, as a result of an intentional or unintentional act or omission on the part of Borrower, or any occupant of the Mortgaged Property, a releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of any Hazardous Substances onto the Mortgaged Property or into waters or other lands, and (viii) give all notifications and prepare all reports required by Environmental Laws or any other law with respect to Hazardous Substances existing on, released from or emitted from the Mortgaged Property.

(c)   That if either Borrower or Guarantor fail to diligently dispose of or secure any Hazardous Substance after discovery thereof in full compliance with all applicable laws and regulations, Lender may at its option, but without any obligation whatsoever, proceed to so dispose of or secure the Hazardous Substance or take such other action necessitated or resulting therefrom at the cost and expense of Borrower. Borrower and Guarantor further agree that in the Event of Default or if any Hazardous Substance is discovered in, on or under the Mortgaged Property or is attributable to or affects the Mortgaged Property, Borrower and Guarantor shall, at their expense, permit an environmental inspection, audit, assessment, or other testing or monitoring of the Mortgaged Property, for the sole benefit of Lender, to be conducted by Lender or by an independent agent selected by Lender.

(d)   Borrower and Guarantor acknowledge and agree that their obligations under this Section 4.04 are not and shall not be deemed to constitute mortgage debt, that such obligations are not secured by the Mortgage, and that such obligations shall not be terminated or otherwise affected by the sale of the Mortgaged Property in satisfaction or partial satisfaction of the Note, any foreclosure of the Mortgage or by any proceeding or deed in lieu of foreclosure or by any payment or performance of any other indebtedness or obligation or by any passage of title to Lender or by any disposition by Lender of all or any part of the Mortgaged Property or by any other action or thing, including any anti-deficiency provisions of applicable law, and that such obligations are totally independent of and unaffected by the terms of any Loan Documents or other writing or agreement, and Borrower and Guarantor

specifically forever waive any and all claims and defenses to the contrary. The obligations of Borrower and Guarantor under this Section 4.04 shall survive payment of the Note.

(e) Borrower and Guarantor hereby indemnify and hold harmless the Lender, its officers, directors, employees, agents, contractors, subcontractors, licensees, invitees, successors and assigns ("Indemnified Parties") from and against any and all claims, losses, liabilities (including without limitation strict liability), suits, obligations, fines, damages (other than consequential), judgments, injuries, administrative orders, consent agreements and orders, penalties, actions, causes of action, charges, costs and expenses, including, without limitation, attorneys' fees and consultants' fees (i) arising out of the inclusion in the Mortgaged Property of Hazardous Substances or the presence on, the release from, the generation, manufacture, refining, treatment, storage, handling or disposal on, in or from the Mortgaged Property of any Hazardous Substances, or any underground or above ground storage tanks containing Hazardous Substances and the cost of removal and remediation of the foregoing, or (ii) arising out of the transportation, discharge or removal from the Mortgaged Property of any Hazardous Substance, or (iii) arising out of the inclusion in any product manufactured on the Mortgaged Property of a Hazardous Substance; or (iv) arising out of the failure to perform the removal or abatement of or to institute a safe, effective and environmentally approved control plan for any Hazardous Substance or the replacement or removal of any soil, water, surface water, or ground water containing Hazardous Substance in accordance with Environmental Laws; or (v) arising out of the existence of any environmental lien against the Mortgaged Property pursuant to any Environmental Laws; or (vi) arising out of any violation or claim of violation of Environmental Laws with respect to the Mortgaged Property; or (vii) arising out of any administrative proceedings and negotiations of any description with any and all persons, political subdivisions, or governmental agencies in connection with an alleged or actual violation of an Environmental Law or presence of Hazardous Substances on the Mortgaged Property; or (viii) arising out of any breach of any of the representations and covenants contained herein relating to Hazardous Substances and Environmental Laws (collectively the "Indemnified Loss"). Borrower and Guarantor shall bear, pay and discharge such Indemnified Loss (unless arising out of Lender's negligence or misconduct which is material) as and when the same becomes due and payable. This indemnity is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of the Mortgaged Property, whether by payment of the Loan or any deed-in-lieu of foreclosure of the Mortgaged Property. In addition, this Section is intended to be cumulative of any rights of the Lender under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Borrower and Guarantor hereby waive any restrictions or limitations that such statutes may impose on Borrower's and Guarantor's liability or Lender's rights or remedies under this Section. Borrower and Guarantor agree that (i) this Section is intended as Lender's written request for information (and Borrower's and Guarantor's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (ii)

each provision in this Section (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Mortgaged Property is intended by Lender and Borrower and Guarantor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

(f)     In the event that any portion of the Mortgaged Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as 'affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Agreement, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Mortgaged Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Borrower and Guarantor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Mortgaged Property and Borrower knew or should have known of the activity of such lessee, occupant or user which caused or contributed to the release or threatened release.

## ARTICLE V
## EVENTS OF DEFAULT; RIGHTS AND REMEDIES

Section 5.01  Event of Default Defined.  As used herein, the term Event of Default shall include each or all of the following events:

(a)     Borrower shall fail to pay any principal or interest due under the Note or any other amount payable hereunder when due.

(b)     Borrower or Guarantor shall default in the performance of any agreement, term, provision, condition, or covenant required to be performed or observed by Borrower or Guarantor hereunder or under the Loan Documents (other than non payment and other than a covenant or agreement or default that is elsewhere in this Agreement or in the Loan Documents specifically dealt with) required to be performed or observed by Borrower or Guarantor hereunder or any other Loan Document or other agreement with or in favor of Lender which is not cured within thirty (30) days of delivery of written notice of default, or if the breach is of such a nature that it cannot reasonably be cured or remedied within the thirty (30) day period, the time period for cure shall be extended for such period as may be necessary to cure such failure with reasonable diligence, but not to exceed sixty

(60) days after such written notice.

(c)  Any financial information, statement, certificate, representation or warranty given to Lender by Borrower (or any of their representatives) or either Guarantor in connection with entering into this Agreement or the other Loan Documents and/or any borrowing hereunder, or required to be furnished under the terms hereof or the Loan Documents, shall prove to be untrue in any material respect (as determined by Lender in the exercise of its reasonable judgment) as of the time when given.

(d)  Borrower or Guarantor (or their respective Affiliates) shall be in default under the terms of any loan agreement, promissory note, guaranty, lease, conditional sales contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or Guarantor to Lender or any of its Affiliates, and the period of grace, if any, to cure said default shall have passed, unless such default or the underlying claim is being contested by Borrower or such Guarantor based on a legitimate, good faith argument and Borrower or such Guarantor has bonded or reserved sufficient monies to satisfy such default or underlying claim.

(e)  Borrower or Guarantor shall be in default under the terms of any loan agreement, promissory note, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness in excess of $100,000 owed by Borrower or Guarantor to any third party, and the period of grace, if any, to cure said default shall have passed, unless such default or the underlying claim is being contested by Borrower or Guarantor based on a legitimate, good faith argument and Borrower or Guarantor has bonded or reserved sufficient monies to satisfy such default or underlying claim.

(f)  Any final judgment shall be obtained against Borrower or Guarantor that, together with all other outstanding unsatisfied judgments against Borrower or such Guarantor shall exceed the sum of $100,000 and shall remain unvacated, unbonded or unstayed for a period of 30 days following the date of entry thereof, unless such default or the underlying claim is being contested by Borrower or such Guarantor based on a legitimate, good faith argument and Borrower or such Guarantor has bonded or reserved sufficient monies to satisfy such default or underlying claim.

(g)  (i) Borrower shall cease to exist or the death or incompetency of Guarantor, unless such Guarantor shall be replaced by a replacement guarantor acceptable to Lender within four (4) months of such death or legal determination of incompetency; (ii) Guarantor shall attempt to revoke Guarantor's Guaranty or any Guaranty becomes unenforceable in whole or in part for any reason; or (iii) any bankruptcy, insolvency or receivership proceedings, or an assignment for the benefit of creditors, shall be commenced by Borrower or Guarantor under any federal or state law; or (iv) if an order for relief under any present or future federal bankruptcy act or similar state or federal law shall be entered against Borrower or Guarantor, or if a petition or answer requesting or proposing the entry of such order for relief or

the adjudication of Borrower or Guarantor as a debtor or a bankrupt or its or their reorganization under any present or future state or federal bankruptcy act or any similar federal or state law shall be filed in any court and such petition or answer shall not be discharged or denied within sixty (60) days after the filing thereof or; (v) Borrower or Guarantor shall become the subject of any out-of-court settlement with substantially all of its creditors; or (vi) Borrower or Guarantor is unable or admits in writing its inability to pay its debts as they mature.

(h)   There is a material adverse change in the financial condition of Borrower or Guarantor, or in any collateral securing the Loan.

(i)   There is any transaction or series of transactions which would result in a change of Controlling Interest of Borrower. "Controlling Interest" shall mean membership interests representing a majority of the outstanding membership interests in the limited liability company.

(j)   A survey shows that the Project encroaches upon any easements, unvacated street, building or parking set-backs, or upon any adjoining property to an extent deemed material by Lender.

(k)   The Project is abandoned or shall be unreasonably delayed or be discontinued for a period of forty-five (45) consecutive calendar days or such number of days as is deemed to be reasonable by Lender under the particular circumstances of the delay, in each instance, for reasons other than acts of God, fire, storm, strikes, blackouts, labor difficulties, riots, inability to obtain materials, equipment or labor, governmental restrictions or any similar cause over that Borrower is unable to exercise control.

(l)   Lender shall determine that additional sums are to be deposited with Lender to provide for the completion of the Project and Borrower shall fail to deposit such sums as required by said Section 2.04 of this Agreement.

(m)   Borrower has failed to provide additional equity or provide additional collateral as required under Section 7.20.

(n)   All or any portion of the Project or the Mortgaged Property, or the legal, equitable or any other interest therein, shall be sold, transferred, assigned, leased or otherwise disposed of except as permitted by this Agreement or unless the prior written consent of Lender is first obtained.

(o)   At the time any Advance is requested by Borrower, the title to the Mortgaged Property is not reasonably satisfactory to Lender, regardless of whether the lien, encumbrance or other question existed at the time of any prior Advance.

(p)   The Project is materially damaged or destroyed by other casualty and the loss, in the reasonable judgment of Lender, is not adequately covered by insurance actually collected or in the process of collection.

(q)    An event of default occurs under any of the Loan Documents. Reference is hereby made to the Loan Documents for additional occurrences constituting an Event of Default hereunder.

(r)    Subordinate Lender defaulting under the terms of the standstill and inter-creditor agreement between Lender and Subordinate Lender.

(s)    In the event Borrower forms a CFD, Borrower fails to apply the proceeds of any CFD Bonds to reduce the outstanding principal balance of the Loan.

Section 5.02 Rights and Remedies. Upon the occurrence of an Event of Default Lender may, at its option, exercise any and all of the following rights and remedies (and any other rights and remedies available to it):

(a)    Lender may terminate the Commitment and any further obligation to fund Advances hereunder.

(b)    Lender may, by written notice to Borrower, declare immediately due and payable all unpaid principal of and accrued interest on the Note, together with all other sums payable hereunder, and the same shall thereupon be immediately due and payable without presentment or other demand, protest, notice of dishonor or any other notice of any kind, all of which are hereby expressly waived; provided, however, that upon the filing of a petition commencing a case naming Borrower and/or Guarantor as debtor under the United States Bankruptcy Code, the principal of and all accrued interest on the Note shall be automatically due and payable without any notice to or demand on Borrower or any other party.

(c)    Lender shall have the right, in addition to any other right of set-off, to apply any amounts Borrower has deposited with Lender against any sums due pursuant to the Note and Mortgage.

(d)    In addition to and not in lieu of all other rights and remedies hereunder, if Lender has not received, within 10 days of written notice, any financial information, statement and/or certificate, required to be furnished under the terms hereof or the Loan Documents, Lender shall have the right to assess a late fee in the amount of $25 per document, per day.

(e)    Lender shall have the right, in addition to any other rights provided by law or in equity, to enforce its rights and remedies under the Loan Documents.

### ARTICLE VI
### PARTIAL RELEASE OF PARCELS

Section 6.01. Partial Releases.

(a)   Lender shall release from the lien of the Mortgage the parcel that is the subject of
a parcel sale provided that the proceeds from the closing of such parcel are applied
in reduction of loan principal as follows:  The amount to be applied in reduction of
principal from each parcel sale shall be equal to the greater of (i) 100% of the Net
Sales Proceeds; (ii) 90% of Gross Sales Proceeds or (iii) the minimum scheduled
price for each parcel as outlined on Exhibit C (the "Release Price").

(b)   Provided that any partial release shall be contingent upon, in addition to the
payment of the Release Price, the following:

(i)    The Release Price paid to Lender must be free of any lien or claim of any
third party.

(ii)   Lender shall be paid a processing fee of $250.00 to process each partial
release and the additional costs of recording each partial release shall be
an expense of Borrower.

(c)   Borrower shall submit to lender its written request for a partial release,
accompanied by a Certificate of Release Price in the form of Exhibit B, and copies
of any other documentation required of Lender in connection with the partial
release;

(d)   Borrower shall deliver to Lender certified funds (which funds may be delivered out
of proceeds of the close of escrow of such parcel) in an amount equal to the
Release Price for each parcel to be released.

Section 6.02.  Conditions Precedent to Partial Release.  As a condition precedent to each
partial release delivered by Lender hereunder, Borrower must satisfy all of the following
requirements, provided that Lender may in its sole discretion, waive any one or more of the
following requirements with respect to delivery of a partial release, but such waiver in one
instance will not prevent Lender from requiring compliance with such requirement with respect to
any future partial release:

(a)   There shall exist no Event of Default under this Agreement or the Loan Documents
and no act, event or condition shall have occurred and then be existing which with
notice and/or the lapse of time would constitute a default under any of the Loan
Documents.

(b)   The warranties and representations made in this Agreement and under the Loan
Documents shall be true and correct in all material respects on and as of the date
of each request for a partial release, with the same effect as if made on that date.

(c)   Borrower shall have sold the parcel(s) subject to such release in accordance with
all applicable law.

ARTICLE VI
MISCELLANEOUS

Twelve Oaks Partners, LLC
Loan Agreement                           27